441 So.2d 1073 (1983)
Thomas Dewey POPE, Appellant,
v.
STATE of Florida, Appellee.
No. 62064.
Supreme Court of Florida.
October 27, 1983.
Rehearing Denied January 11, 1984.
*1074 Michael D. Gelety, Sp. Public Defender, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen. and Marlyn J. Altman, Asst. Atty. Gen., West Palm Beach, for appellee.
EHRLICH, Judge.
This is an appeal from conviction of three counts of murder in the first degree. The jury recommended and the trial judge imposed life sentences for two of the murders and a sentence of death for the third. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We affirm the convictions and the sentences.
On January 19, 1981, the bodies of Al Doranz and Caesar Di Russo were discovered in an apartment rented to Kristine Walters. Both had been dead several days but Di Russo's body was in a more advanced state of decomposition than Doranz's. Both victims had been shot, Doranz three times and Di Russo five times. A spent.22 caliber shell casing was found under Di Russo's body. Three days later, the body of Kristine Walters was found floating in a canal. She had been shot six times with exploding ammunition, her skull was fractured and she had been thrown into the canal while still breathing.
All three victims had been shot with exploding ammunition, so ballistics comparison was impossible. However, parts of an AR-7 rifle were found in the canal near Walters's body and the spent shell casing under Di Russo's body had been fired from an AR-7 weapon.
*1075 Investigation led to appellant's girlfriend, Susan Eckard, and ultimately police were able to show that Doranz purchased an AR-7 rifle for Pope shortly before the murder. Eckard and Pope admitted being with Doranz and Walters at Walters's apartment on Friday night, the night Doranz and Di Russo were killed. Eckard later testified that Pope had arranged a drug deal with Doranz and Di Russo. She stated that she and Pope left Walters's apartment to visit Clarence "Buddy" Lagle and to pick up some hamburgers. They then returned to the apartment where Pope and Doranz convinced Walters to go with Eckard to the apartment where Pope had been staying.
Later that same night, Pope arrived at his apartment and told the women there had been trouble and that Doranz had been injured but that it was best for Walters to stay away from him for a while. Eckard said she knew that Di Russo and Doranz were dead, and that she had known Pope intended to kill them at this point. The next day, Walters checked into a nearby motel, where Pope supplied her with quaaludes and cocaine. On Sunday, Pope told Walters he would take her to see Doranz. Eckard testified that Pope had told her that he knew he had to get rid of Walters but that he regretted it because he had become fond of her. According to Eckard, Pope described Walters's murder when he returned and said the gun had broken when he beat Walters over the head with it. The next day Eckard went with Pope to the scene of the crime to collect fragments of the broken stock and to look for the missing trigger assembly and receiver.
Buddy Lagle told the police he had made a silencer for the AR-7 rifle at Pope's request. Because Lagle planned to leave the jurisdiction to take a job on a ship in the Virgin Islands, he was deposed on videotape pursuant to an order granting the state's motion to perpetuate testimony. When the state was unable to produce him at trial, the videotape was admitted into evidence.
Pope was convicted of three counts of first degree murder. The jury recommended a life sentence for the murders of Doranz and Di Russo and death for Walters's murder. The state indicated its agreement with that recommendation, and the trial court imposed sentence accordingly.
Pope challenges his convictions on two grounds: The videotaped deposition should not have been admitted into evidence because the state did not prove Lagle's unavailability at the time of trial and the evidence produced at trial was insufficient to sustain conviction.
Florida Rule of Criminal Procedure 3.190(j) authorizes taking a deposition to perpetuate testimony when a material witness will be unavailable for trial. Appellant does not allege any error in the granting of the motion to take the deposition or in the manner of its taking. Rather, appellant focuses on subsection six of the rule, which states, "No deposition shall be used or read in the evidence when the attendance of the witness can be procured." Fla. R.Crim.P. 3.190(j)(6).
Appellant argues that the state failed to sustain its burden of proof that the deponent, Clarence "Buddy" Lagle, was unavailable at the time of the trial. During the deposition, Lagle had discussed his plans for leaving the jurisdiction of the trial court, but represented that he would be available to appear in person at the trial. Prior to trial, the defense attorney, Mr. Eber, filed a motion to exclude the deposition. The state's attorney, Mr. Garfield, offered as evidence of Lagle's unavailability a memorandum from his secretary stating that she had telephoned the captain of the ship on which Lagle was thought to be working and had discovered he was no longer employed there and the captain had no idea of his present whereabouts. The state offered no other factual evidence of any attempt to locate Lagle, nor did the state issue a subpoena for him. Nonetheless, the colloquy in the pretrial motion to suppress continued:
THE COURT: Have you both tried to locate him?
MR. GARFIELD: Yes, sir.
THE COURT: Is he available?
*1076 MR. GARFIELD: No, sir.
MR. EBER: If I may reply very briefly, I have no reason to doubt that this fellow is not available now, but last week was the first time the State tried to contact that man in many months.
Florida Rule of Criminal Procedure 3.190(j)(6) requires more than a perfunctory attempt to contact a witness whose testimony has been perpetuated. While the question of how far a party must go to satisfy the requirements of the rule will be susceptible to different answers depending on the circumstances of each case, the party offering the deposition must show it has exercised due diligence in its search. See, e.g., Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); Palmieri v. State, 411 So.2d 985 (Fla. 3d DCA 1982); Layton v. State, 348 So.2d 1242 (Fla. 1st DCA 1977); Outlaw v. State, 269 So.2d 403 (Fla. 4th DCA 1972), cert. denied, 273 So.2d 80 (Fla. 1973). However, defense counsel's statement that he had no reason to doubt Lagle's unavailability foreclosed the trial court's inquiry into the matter and the state's opportunity to present any other evidence it may have had which would have conclusively shown the exercise of due diligence. A party may not invite error and then be heard to complain of that error on appeal. Behar v. Southeast Banks Trust Co., 374 So.2d 572 (Fla. 3d DCA 1979), cert. denied, 379 So.2d 202 (Fla. 1980). We therefore find no merit in this point of appellant's appeal.
A thorough review of the record reveals that appellant's second point, the insufficiency of the evidence to sustain the convictions, is likewise without merit. We therefore affirm the convictions.[1]
Appellant also challenges the imposition of the death penalty for the murder of Kristine Walters. Pope urges as error the trial court's failure to find mitigation in a psychiatrist's unrebutted testimony that Pope suffered from post-traumatic stress syndrome as a result of his combat experience in Viet Nam. The law is clear that the trial court must consider all evidence offered in mitigation. Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The transcript of court proceedings and the trial court's discussion of the evidence in the sentencing order show the serious consideration the court gave to the issue. So long as all the evidence is considered, the trial judge's determination of lack of mitigation will stand absent a palpable abuse of discretion. Daugherty v. State, 419 So.2d 1067 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983); Riley v. State, 413 So.2d 1173 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982); Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982).
The trial court did find a mitigating factor in Pope's honorable service as a United States Marine in the Viet Nam war. In contrast, the court found four aggravating circumstances. First, the defendant had been convicted of another capital felony, the murders of Donranz and Di Russo. King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981); Lucas v. State, 376 So.2d 1149 (Fla. 1979). Second, the capital felony was committed for the purpose of avoiding or preventing lawful arrest. The defendant's own statements to Susan Eckard as well as the circumstances surrounding the murder show, beyond a reasonable doubt, that this was the sole motive for the murder. Jones v. State, 411 So.2d 165 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982); Riley v. State, 366 So.2d 19 (Fla. 1978), cert. denied, ___ U.S. ___, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982). Third, the capital felony was committed in a cold, calculated and premeditated manner. Susan Eckard's testimony about Pope's discussions of the murder with her prior to the killing supports beyond a *1077 reasonable doubt the finding of premeditation as required by this statutory aggravating factor. See, e.g., Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982). Fourth, the capital felony was especially heinous, atrocious or cruel. The medical examiner's testimony at trial revealed that the pattern of gun-shot wounds on Walter's body revealed, without indicating the sequence of shots, that she had been shot from the rear, had attempted to flee the attack, and had been shot twice with the gun pressed close to her abdomen. The wounds caused by the explosion of the bullets at impact would have been extraordinarily painful without causing unconsciousness or death. When this had failed to kill her, she had been clubbed over the head with the gun barrel. When the gun barrel broke before the murderous end had been achieved, the defendant dragged his still-living victim to the canal where he threw her to drown. The evidence of conscious psychological and physical suffering is clear from the medical examiner's testimony and supports a finding that this murder was heinous, atrocious and cruel to an extent greater than that inherent in all murders. See, e.g., Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). We find no merit to appellant's assignment of error to the finding of any of these factors.
The trial court, in finding the murder especially heinous atrocious or cruel commented that "the Defendant has [not] shown any remorse, having elected to steadfastly deny his guilt." This proposition merits some discussion. We agree that Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982), as cited by the trial court, stands for the proposition that lack of remorse may be considered in finding that a murder was especially heinous, atrocious and cruel. However, in that case the trial court inferred lack of remorse from an examination of the defendant's own statements about the crime. To equate a defendant's not-guilty plea with lack of remorse which may be considered in weighing an aggravating circumstance in support of imposition of the death penalty would in effect punish the defendant for exercising rights of due process.
Furthermore, this misapplication of this earlier case has called to our attention a basic contradiction between the consideration of lack of remorse in the context of this particular aggravating factor and all other considerations appropriate to this factor. An especially heinous, atrocious or cruel homicide is one which is "accompanied by such additional acts as to set the crime apart from the norm of capital felonies." State v. Dixon, 283 So.2d at 9. This definition focuses on the manner in which the crime was accomplished  on the act itself  rather than on the perpetrator of the act. However, the definition continues, describing an especially heinous, atrocious or cruel crime as "the conscienceless or pitiless crime which is unnecessarily torturous of the victim." Id. While still focusing on the crime and experience of the victim, this definition also tended to focus attention on the mindset of the murderer  his consciencelessness or pitilessness. This aspect of the aggravating factor was recognized in the jury instructions adopted by this Court in 1975.
"Heinous" means extremely wicked or shockingly evil.
"Atrocious" means outrageously wicked and vile.
"Cruel" means designed to inflict a high degree of pain; utter indifference to, or enjoyment of, the suffering of others; pitiless.

Standard Jury Instructions in Criminal Cases, 78 (1975) (emphasis added.) Because juries were invited to consider evidence tending to show a lack of pity, lack of remorse came to be considered relevant to the determination under this aggravating factor.
*1078 In 1981 the Supreme Court adopted a completely revised set of Standard Jury Instructions in Criminal Cases, "intended as a definitive statement of the law on which a trial jury is required to be instructed."[2]Notes on the Scope, Organization and Use of These Instructions, Florida Standard Jury Instructions in Criminal Cases xxi (1981). The new jury instruction on finding a homicide to be especially heinous, atrocious or cruel now reads: "The crime for which the defendant is to be sentenced was especially wicked, evil, atrocious or cruel." No further definitions of the terms are offered, nor is the defendant's mindset ever at issue. Thus, we find any consideration of defendant's remorse extraneous to the question of whether the murder of which he was convicted was especially heinous, atrocious or cruel.
Excluding this issue accords with this Court's exclusion of other issues from consideration under this factor. Events occurring after death, no matter how revealing of depravity and cruelty, are not relevant to the atrocity of the homicide. See e.g., Simmons v. State, 419 So.2d 316 (Fla. 1982) (burning of victim's body); Blair v. State, 406 So.2d 1103 (Fla. 1981) (burying wife's body in backyard patio area); Halliwell v. State, 323 So.2d 557 (Fla. 1975) (dismemberment of body after death).
On the other hand, lack of remorse has not been considered in those situations where there were no independent grounds for finding the murder especially heinous, atrocious or cruel. Where death has been instantaneously inflicted on an unsuspecting victim, or where the manner in which the victim was murdered has not exceeded the atrocity and cruelty inherent in any murder, this aspect of the aggravating factor has not been found to apply, regardless of the defendant's mental and emotional perceptions of the event. See, e.g., Odom v. State, 403 So.2d 936 (Fla. 1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Lewis v. State, 398 So.2d 432 (Fla. 1981).
We have held that lack of remorse is not an aggravating factor in and of itself. McCampbell v. State, 421 So.2d 1072 (Fla. 1982). Its use as additional evidence of an especially heinous, atrocious or cruel manner of killing only when the facts of the crime support the finding of that aggravating factor without reference to remorse is, at best, redundant and unnecessary. Unfortunately, remorse is an active emotion and its absence, therefore, can be measured or inferred only from negative evidence. This invites the sort of mistake which occurred in the case now before us  inferring lack of remorse from the exercise of constitutional rights. This sort of mistake may, in an extreme case, raise a question as to whether the defendant has been denied some measure of due process, thus mandating a remand for reconsideration of the sentence. For these reasons, we hold that henceforth lack of remorse should have no place in the consideration of aggravating factors. Any convincing evidence of remorse may properly be considered in mitigation of the sentence, but absence of remorse should not be weighed either as an aggravating factor nor as an enhancement of an aggravating factor.
On the facts before us, we find the applicability of this aggravating factor was proved beyond a reasonable doubt without regard to Pope's remorse or lack thereof. We find the sentence of death to have been properly imposed.
It is so ordered.
BOYD, OVERTON, McDONALD and SHAW, JJ., concur.
ALDERMAN, C.J., and ADKINS, J., concur in result only.
NOTES
[1] Additionally, although the specific issue was not raised on appeal, we have searched the record and find the imposition of life sentences for the murders of Doranz and Di Russo to be appropriate. We therefore affirm these sentences.
[2] In 1979 an additional aggravating factor was added to those which could be considered in imposing the death penalty:

(i) The capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
Fla. Stat. 921.141(5)(i) (1979). This factor not only takes into consideration the mental and emotional attitudes of the murderer, it narrowly limits those attitudes which may be weighed in the sentencing process. The language of the jury instruction on this factor is identical to that in the statute.