549 So.2d 179 (1989)
George Alexander HILL, Appellant,
v.
STATE of Florida, Appellee.
No. 70444.
Supreme Court of Florida.
September 14, 1989.
*180 James Marion Moorman, Public Defender, and Steven L. Bolotin, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Hill appeals his conviction for first-degree murder and his sentence imposing the death penalty. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution. We affirm the conviction but reverse and remand for resentencing.
The victim's body was discovered shortly after noon on 19 November 1985 by her husband in the temporary employment office operated by the couple. She was lying on her back with her clothes, including undergarments, removed or pulled down, suggesting a sexual crime. She had been *181 brutally beaten, stomped, choked, and strangled. The medical examiner testified that she had been struck with great force with a coffee urn, breaking her cheekbone; that she had been stabbed with a broken broom handle, breaking ribs and puncturing her chest; that the broken handle of a hand mirror had been forced down her throat; that the handle of the broom had been pressed with great force across her throat; that she had been alive when these injuries were inflicted; and that she died of suffocation. Blood splatters on the lower wall indicated many of the blows were delivered after the victim was prone. Her billfold was missing. The physical evidence against appellant included finger and palm prints on the coffee urn, broom handle, and pocket mirror used in the attack. Shoe prints found in the gore, on the face of the victim, and on the hand mirror were similar to those of shoes hidden by appellant and discovered by the police. Clothes fibers and pubic and head hairs removed from the body were similar to standards taken from appellant. A coworker of appellant, who had been with him the morning of the murder at the employment office, testified that appellant stated he would rape and beat the victim if he had the chance. Appellant also gave a statement to the police admitting he attacked the victim. At trial, appellant testified he struck and threw the victim to the floor, after she attacked him, but denied killing her or leaving her in the condition she was in when the body was discovered. The jury recommended, and the trial judge imposed, the death penalty.
Appellant raises seven issues, three of which concern the guilt phase and which we address first. He argues that the trial judge erred in not conducting a Faretta[1] inquiry prior to trial when appellant requested a new attorney based on his belief that the public defender's office was too busy to handle his defense. A Faretta inquiry is appropriate when a defendant invokes the right to act as counsel. It was not appropriate here where appellant asked for new counsel based on his belief that his assigned counsel was too busy.
Appellant next argues that the court erred in not admitting the testimony of a coworker (A) that a second coworker (B) told him (A) that a third coworker (C) admitted committing the murder. Neither B nor C was available to testify. Under the Florida Evidence Code, the statements of B and C are inadmissible hearsay except as provided by statute. §§ 90.801-90.802, Fla. Stat. (1985). Moreover, because the testimony of A is hearsay within hearsay in that it combines the hearsay statements of both B and C, it is inadmissible unless the hearsay statements of both B and C conform "with an exception to the hearsay rule as provided in s. 90.803 or s. 90.804." § 90.805, Fla. Stat. (1985). The statement of C would be admissible as an exception to the hearsay rule under section 90.804(2)(c), Florida Statutes (1985), because it tends to expose declarant C to criminal liability and exculpate the defendant provided: (1) declarant B was available to testify as a witness or B's hearsay statement to A itself qualified as a statutory exception to the hearsay rule; and (2) corroborating circumstances showed the trustworthiness of the statement. The proffered testimony of A fails on all counts. First, B was not available to testify. Second, B's hearsay statement of what C told him was not a statement against B's interests and was not otherwise an exception to the hearsay rule under either section 90.803 or 90.804. Third, the critical hearsay statement of C, while it is against his interest, is inadmissible regardless of whether offered by B or A because no corroborating circumstances show the trustworthiness of the statement. The trial court did not err in declining to admit the proffered hearsay within hearsay. As an alternative argument on the same point, appellant urges that by refusing the testimony the trial court deprived him of his due process right under the sixth and fourteenth amendments to the United States Constitution and article I, section 16 of the Florida Constitution to present witnesses in his behalf, contrary to *182 Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). We disagree for several reasons.
The constitutional argument grounded on due process and Chambers was not presented to the trial court. Failure to present the ground below procedurally bars appellant from presenting the argument on appeal. Glendening v. State, 536 So.2d 212 (Fla. 1988); Tillman v. State, 471 So.2d 32, 34 (Fla. 1985); Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982). Second, there is no due process right to present uncorroborated and untrustworthy evidence to the trier of fact from witnesses who cannot be cross-examined because they have no knowledge of the substantive truth of their testimony. Chambers, on which appellant relies, bears no factual or constitutional similarity to the case at hand. In Chambers, Mississippi law prohibited the introduction of a hearsay statement against penal interest. Florida law does not. In Baker v. State, 336 So.2d 364 (Fla. 1976), acknowledging and relying in part on Chambers, we held that hearsay declarations against penal interests were admissible. Baker was subsequently codified in the Florida Evidence Code adopted by chapter 76-237, Laws of Florida. See C. Ehrhardt, Florida Evidence § 804.4 (2d ed. 1984). Moreover, unlike here, the hearsay statements in Chambers "bore persuasive assurances of trustworthiness," 410 U.S. at 302, 93 S.Ct. at 1049, and all were corroborated by evidence from witnesses available to testify of their own knowledge. Here, the proffered testimony is hearsay within hearsay from a witness who did not himself hear the declaration against penal interest and, thus, had no knowledge of whether the declaration was actually made. We note, finally, that the exclusion of the hearsay in Chambers was coupled with the refusal of the state to permit meaningful cross-examination of the person who allegedly made the declarations against penal interests. There, unlike here, all potential witnesses were available for direct and cross-examination on the hearsay statements. We conclude that the hearsay within hearsay was not admissible under Florida law and its exclusion did not deny appellant a fair trial. Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984).
Appellant next argues that the trial court erred in permitting the jury to use a transcript of his inculpating statement to the police as an aid in understanding the taped statement played to the jury. Appellant does not challenge the accuracy of the transcript but urges that we overrule Golden v. State, 429 So.2d 45 (Fla. 1st DCA), review denied, 431 So.2d 988 (Fla. 1983), on the ground that the tape itself was the best evidence. We see no error. The transcript was used as an aid to understanding. There is no suggestion that the transcript conflicted with or added information to the tape itself. The transcript was not carried into the jury room and there is no suggestion it became the focal point of inquiry. Finding no reversible error in the guilt phase, we affirm the conviction.
The trial judge found three aggravating circumstances in imposing the death penalty: section 921.141(5)(h), Florida Statutes (1985), the capital felony was especially heinous, atrocious, or cruel; section 921.141(5)(d), the capital felony was committed in the course of committing attempted sexual battery; and section 921.141(5)(f), the capital felony was committed for pecuniary gain. In mitigation, the trial court found that appellant had no significant criminal history.
Appellant does not challenge the first two aggravating circumstances. There was competent, substantial evidence showing that the murder was committed in the course of a sexual battery and that the murder was especially heinous, atrocious, or cruel. We approve these findings.
Appellant urges error, however, in the finding that the murder was committed for pecuniary gain. First, it is argued that the evidence does not show that appellant took the victim's billfold allegedly containing her money. Instead, appellant argues, he told another person of the attack immediately afterwards and asked that he check on the victim's condition. This person, appellant argues, might have taken *183 the billfold and may even have committed the murder. We disagree. There was evidence that the victim carried her money in her billfold, carried her billfold in her purse, and that the billfold was missing when her body was discovered. Based on this evidence and appellant's conviction for the murder, the fact finder could reasonably infer that appellant also took the billfold and money. Second, appellant argues, even if it is conceded that he took the money, there is inadequate evidence to show that the murder was committed for pecuniary gain. Appellant urges instead that the murder was an unfortunate consequence of the attempted sexual battery and pecuniary gain was not a motivating factor. The state argues that there is evidence that appellant had no money to pay for drinks immediately prior to the murder and that it is reasonable to infer from the taking of the money that the murder was motivated by pecuniary gain as well as the desire to commit sexual battery. Appellant cites Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989), where we held, on the facts of the case, that the victim's car could have been taken for the purpose of escape and was not necessarily the primary motivation for committing the murder. Appellant also cites Simmons v. State, 419 So.2d 316, 318 (Fla. 1982), where, on the facts of the case, we held the evidence was insufficient "to prove a pecuniary motivation for the murder itself beyond a reasonable doubt." We agree with appellant that the state did not show beyond a reasonable doubt that the murder was committed for pecuniary gain. The money could have been taken as an afterthought. We are left, then, with two aggravating circumstances and one mitigating circumstance. On this record, we cannot tell with certainty that the result of the weighing process would be the same absent the invalid aggravating factor. Brown v. State, 381 So.2d 690 (Fla. 1980); Elledge v. State, 346 So.2d 998 (Fla. 1977). Moreover, as will be seen below, there is sufficient doubt relative to the jury's recommendation to warrant a full sentencing trial before a new jury where both parties will be entitled to introduce evidence on aggravating and mitigating circumstances and whether the death penalty should be imposed. Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).
Appellant argues that the trial judge erred in failing to weigh nonstatutory mitigating testimony from appellant's mother that he was a good son who worked to provide for her. Rogers v. State, 511 So.2d 526, 535 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). This testimony was presented to, and considered by, both the jury and judge. Pope v. State, 441 So.2d 1073, 1076 (Fla. 1983). Neither jury nor judge gave the mother's testimony sufficient weight to outweigh the aggravating factors.
So long as all the evidence is considered, the trial judge's determination of lack of mitigation will stand absent a palpable abuse of discretion. Daugherty v. State, 419 So.2d 1067 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983); Riley v. State, 413 So.2d 1173 (Fla.), cert. denied, 459 U.S. 981, 103 S.Ct. 317, 74 L.Ed.2d 294 (1982); Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982).
Pope, 441 So.2d at 1076. Accord Bryan v. State, 533 So.2d 744, 749 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989). We see no error.
Appellant also presents two challenges to the jury's advisory recommendation of death. In closing argument to the jury during the penalty phase, the prosecutor attempted to argue that the murder was cold, calculated, and premeditated with no moral or legal justification. In doing so, he attempted to refute the possibility that appellant's emotional, perhaps remorseful, confession to the attack on the victim was proof that the murder was not committed in a cold, calculated, and premeditated manner, i.e., that it was an emotional crime of passion. The pertinent portion of the record reads as follows:
[Prosecutor]: Be that as it may, I submit that the defendant was attempting to *184 do exactly what he had told Mr. Demonbruen, Ernest Demonbruen that he was going to do if he got the chance, [rape and beat the victim] but that Mrs. Lile obviously did not cooperate, and by the time the defendant had rendered her motionless, Mrs. Lile was such a mess that perhaps the defendant changed his mind.
Now, no matter what, and you have to think about this is the context in which these things occur, you'll recall that the defendant, whenever he gave the first statement, which was on November the 20th, which was the day after the murder of Mrs. Lile, the defendant showed no emotion about her death. He denied any knowledge, and as a matter of fact, during the conversation, you'll recall the officer's testimony, that he even laughed at it, at least at one point during that interview.
Whenever the defendant was arrested on December the 13th, you now, he says, "Why are you harassing me? I didn't have nothing to do with it. You got the wrong person  "
[Defense Counsel]: I object. That's not going into any of the aggravating factors. That has already been presented to the jury. The jury considered that in their verdict.
[Prosecutor]: One of the circumstances under this particular aggravating factor [cold, calculated, and premeditated] which I'm arguing is a lack of emotion, or lack of remorse in regard to the death of Mrs. Marianne Lile, and the Florida Supreme Court held that that's a proper consideration, and my argument goes to that particular point.
THE COURT: I'll overrule the objection.
[Prosecutor]: It was only after the defendant was confronted with those shoes that he showed any emotion.
Now, that tape has been introduced. You may have listened to it. I know you have listened to it. You heard the defendant crying at various points during that. He was showing emotion.
Now, was that emotion over the fact that he had been caught, or is that emotion over the fact that Mrs. Marianne Lile was dead?
I submit to you, ladies and gentlemen, the only emotion the defendant had is over his predicament. He never demonstrated, except at a time when it was to his advantage, premeditated  no moral or legal justification.
The defendant has denied, of course, that he was the one that did this particular crime. I submit to you that there could be no legal justification, nor moral justification, none whatsoever, and I'm trying to think how somebody could morally justify what this defendant did, and I'm sorry, I just can't do it. If you can think of some reason why 
The primary problem occasioned by the above colloquy arises from the speaking objection by defense counsel, the response by the prosecutor, and the trial judge's overruling of the objection, all in the presence of the jury. The prosecutor's use of "lack of remorse" as a synonym for "lack of emotion" and the inaccurate argument that this Court has upheld lack of remorse as a proper consideration, coupled with the trial judge's seeming approval, could have left the jury with the belief it could consider lack of remorse as a proper aggravating factor. The state, of course, concedes that this is not the law[2] but argues that defense counsel invited the response by arguing an objection in the presence of the jury, that the trial judge properly instructed the jury on the only aggravating factors it could properly consider, which did not include lack of remorse, and that the trial judge's sentencing order did not find either cold, calculated, and premeditated or lack of remorse as aggravating factors. Further, the state argues that the error, if any, was harmless. We have already held above that the sentencing order requires remand for resentencing. We cannot rule out the possibility that the jury's advisory recommendation was improperly influenced by the exchange. Under these circumstances, it is necessary to order a resentencing trial before a new jury.
*185 Appellant also argues that the jury was misinformed on the importance of its sentencing responsibility, contrary to Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by statements of the trial judge that the entire responsibility for sentencing rested on the trial judge. During jury selection, some members of the venire expressed personal misgivings about whether they could ever impose the death penalty. These misgivings were potentially a cause for challenge by the state under Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), and Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). The state has a legitimate interest in not seating jurors who are "unable to view the case impartially." Witt, 469 U.S. at 422, 105 S.Ct. at 851. In an effort to clarify the jury's role and obviate a challenge for cause, the trial judge advised the venire that under Florida law the responsibility for imposing a sentence rested entirely on the trial judge, not the jury. In selecting a jury, these comments work to the benefit of the defendant as well as the state and at this point in the trial defense counsel did not object. Later, during the penalty phase, the trial judge instructed the jury that the final responsibility for imposing sentence rested on the trial judge. Again, there was no objection. Indeed, later, after the jury recommended death, defense counsel argued in a memorandum of law to the trial judge that the jury recommendation was advisory and was not binding on the court, that the trial judge was required to make an independent judgment, and, relying on State v. Dixon, 283 So.2d 1, 8 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974), that the seasoned judgment of the trial judge should be interposed between the inflamed emotions of layman jurors and the death penalty. Appellant's arguments are procedurally barred for failure to object below, and, were we to reach the merits, we have previously resolved the issue contrary to appellant's position in Combs v. State, 525 So.2d 853 (1988), and Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989).
Accordingly, we affirm the conviction but reverse and remand for a new sentencing trial before a new jury in accordance with this opinion.
It is so ordered.
OVERTON, SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, J., concurs in result only.
EHRLICH, C.J., concurs in part and dissents in part with an opinion, in which GRIMES, J., concurs.
EHRLICH, Chief Judge, concurring in part and dissenting in part.
I concur as to guilt but dissent as to the sentence.
I first take issue with the majority's conclusion that it was not proven beyond a reasonable doubt that the murder was committed for pecuniary gain. This factor was supported by circumstantial evidence which is entitled to just as much weight as that given to the circumstantial evidence which was found sufficient to support the finding that the murder was committed in the course of an attempted sexual battery. A comparison of the evidence supporting each factor is instructive.
The doctor who performed the autopsy on the victim confirmed that there was no physical evidence of a sexual battery from his examination. The only evidence establishing that an attempted sexual battery was committed was circumstantial. A witness testified that the defendant had told him earlier during the day of the crime that he might rape the victim. The victim was found partially disrobed with her breasts and pubic area exposed. There is no evidence of when the disrobing occurred, before or after death. There is no evidence whatsoever of any overt acts the defendant may have undertaken which would support a finding of attempted sexual battery except the fact of the victim's having been partially disrobed. The defendant may have been a voyeur rather than a rapist. *186 However, the majority has no problem in concluding that the circumstantial evidence supported the finding that the homicide occurred during the commission of an attempted sexual battery.
In support of the aggravating factor that the murder was committed for pecuniary gain, it was established that Hill knew that the victim had money and that he admitted that he had none. There was also evidence that Hill had no money to pay for drinks just prior to the murder. There was evidence that the victim carried money in her wallet, that her wallet was missing when her body was discovered, and that the wallet was later found with no money. There was no evidence when the wallet was taken, before or after death. From all the evidence presented, the jury could have concluded, as did the trial judge, that there was a pecuniary motivation for the homicide. While I agree that there was no direct evidence that pecuniary gain was one of the motivating reasons for the homicide, there was sufficient circumstantial evidence from which the jury and trial court could have found the factor proven beyond a reasonable doubt. The determination of whether the attempted sexual battery or the theft of the money, either or both, could have resulted as an afterthought was for the jury and the trial judge. In connection with this aggravating factor, the majority is improperly second-guessing the judge and jury.
Even if the majority were correct that one aggravating factor was erroneously found by the trial court, the case should simply be remanded to the trial court for resentencing before the trial judge pursuant to the dictates of Elledge v. State, 346 So.2d 998 (Fla. 1977). Instead, the majority remands for a new sentencing hearing before another jury because it "cannot rule out the possibility that the jury's advisory recommendation was not improperly influenced," Op. at 185, by remarks made by the prosecutor during an exchange with the court in response to an objection to closing argument. With this I cannot agree.
I do not believe it likely that the exchange had the effect feared by the majority. The prosecutor knew that the trial court was going to instruct the jury on the aggravating factor that the murder was cold, calculated, and premeditated with no moral or legal justification. Therefore, it was necessary for the prosecutor in his closing argument to show that the evidence supported a finding of that aggravating factor. What the prosecutor endeavored to do was to nail down the aggravating factor of "cold, calculated, and premeditated" by showing that the defendant was utterly emotionless about the crime until confronted with the shoes he was wearing at the time of the murder. In short, the prosecutor was arguing that the defendant committed the crime without any emotion or feeling and maintained that posture until he was confronted with the damning evidence of his shoes. His theory was that the lack of emotion by the defendant concerning the victim's death was supportive of the presence of this aggravating factor.
While the prosecutor was developing this theme, defense counsel objected on the ground that the argument was "not going into any of the aggravating factors." In responding to this objection, the prosecutor endeavored to explain to the court how he was tying in lack of emotion by the defendant to establish the aggravating factor of "cold, calculated, and premeditated." The prosecutor said "one of the circumstances under this particular aggravating factor [cold, calculated, and premeditated] which I'm arguing is a lack of emotion, or lack of remorse in regard to the death of Mrs. Marianne Lile, and the Florida Supreme Court held that that's a proper consideration, and my argument goes to that particular point." After the objection was overruled, the prosecutor proceeded with his argument to the jury and used the word "emotion" five more times. Never in his argument to the jury did he urge, argue, or utter the words "lack of remorse." Yet the majority latches onto these misspoken words used in argument to the court in response to an objection and concludes that
[t]he prosecutor's use of "lack of remorse" as a synonym for "lack of emotion" *187 and the inaccurate argument that this Court has upheld lack of remorse as a proper consideration, coupled with the trial judge's seeming approval, could have left the jury with the belief it could consider lack of remorse as a proper aggravating factor.
Op. at 184.
"Remorse" and "emotion" have entirely different meanings. Remorse denotes a sense of guilt whereas "emotion" refers to any one of the states designated as fear, anger, disgust, grief, or joy. The Court may be confused by the regrettable mistake in the prosecutor's argument to the court, but I respectfully submit that the jury was not confused and certainly the trial court was not, as it did not find the aggravating factor of cold, calculated, and premeditated.
To send this case back for a retrial of the penalty phase before a jury under these circumstances is a needless and prodigal waste of judicial resources. To say that these remarks addressed to the trial judge could have left the jury with the belief that it could consider lack of remorse as a proper aggravating factor is sheer speculation and regretfully turns logic and reason on their heads.
GRIMES, J., concurs.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[2] Pope v. State, 441 So.2d 1073 (Fla. 1983).