569 So.2d 1234 (1990)
Randall Scott JONES, Appellant,
v.
STATE of Florida, Appellee.
No. 72461.
Supreme Court of Florida.
September 13, 1990.
Rehearing Denied November 15, 1990.
*1235 James B. Gibson, Public Defender, and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Pamela D. Cichon, Asst. Atty. Gen., Daytona Beach, for appellee.
BARKETT, Justice.
Randall Scott Jones appeals two convictions for first-degree murder and the sentence of death imposed for each.[1] He also appeals convictions and sentences received for four noncapital felonies.[2] We affirm the two capital convictions, but because of cumulative errors affecting the penalty phase, we vacate the sentences and remand for a new sentencing proceeding before a jury. We reverse the conviction for sexual battery and affirm the convictions in the remaining noncapital felonies.
During the evening of July 26, 1987, Jones and his codefendant, Chris Reesh, went target shooting with a 30-30-caliber rifle near Rodman Dam in Putnam County. Jones's car became stuck in the sand pits. At about midnight, they flagged down a fisherman who was leaving the area and asked if he could pull them out. The fisherman indicated that he could not but told them to seek help from the driver of a Chevrolet pickup truck parked in the parking lot. Inside the cab of the pickup Matthew Paul Brock and Kelly Lynn Perry were sleeping.
Between 12:30 and 1:30 a.m., a twelve-year-old boy who was camping at the Rodman Dam Campground awoke to the sound of three gunshots fired in rapid succession. Later that morning, a Rodman Dam concession worker noticed cigarette packets, broken glass, and blood in the parking lot. She followed a trail of blood and drag marks across the parking lot for about 160 yards to a wooded area where she discovered Brock's body lying in the underbrush. She called the Putnam County Sheriff's Office. During the search of the area, deputies discovered Perry's partially *1236 clothed body about twenty-five feet deeper into the underbrush.
At trial, Dr. Bonofacia Flora, a forensic pathologist, testified that Brock died instantly from two wounds to the head from a high-powered rifle. Perry died from a single shot to the forehead, also caused by a high-powered rifle.
Matthew Brock's brother and sister-in-law testified to having seen the victim's pickup, while in Jones's possession, parked at a convenience store in Green Cove Springs at approximately 7 a.m. on July 27. They observed bullet holes in the wind-shield and a 30-30-caliber rifle inside. Richard Brock confronted Jones, who was a stranger to him, and asked him where he got the truck. Jones told him he had just purchased the truck for $4,000 and drove away.
On August 16, Jones was arrested in Kosciusko, Mississippi, by the Mississippi Highway Patrol for possession of a stolen motor vehicle. The next day, Detective David Stout and Lieutenant Chris Hord of the Putnam County Sheriff's Office interviewed Jones in Mississippi. Lieutenant Hord testified that after advising Jones of his Miranda rights,[3] Jones gave a statement implicating himself at the scene but blaming Reesh for having shot both victims. Jones admitted driving the pickup to Mississippi, where he planned to get rid of it. In addition to signing a waiver-of-rights form, Jones also signed a consent to search the trailer in which he had been living at the Lighthouse Children's Home in Mississippi. In the trailer, Detective Stout recovered pay stubs from Perry's employer in Palatka bearing her fingerprint. A calendar bearing Perry's name was also recovered from the bottom of a nearby dumpster.
On August 20, Jones was transported from Mississippi to Florida. Lieutenant Hord testified that at the outset of the trip, he reminded Jones that his Miranda rights were still in effect. Jones then volunteered a second statement which was reduced to writing and signed after their arrival at the Putnam County jail. In this statement, Jones admitted that his earlier statement was true, except that he had reversed his and Reesh's roles in the murder.
The state's case was completed with the testimony of Rhonda Morrell, who was Jones's ex-fiancee. She testified that Jones had told her that he had taken her father's rifle for target shooting and that "he had shot those two people. He didn't remember doing it, but he had done it." She also testified that Jones had told her that he had pawned the rifle, and she identified Jones's signature on a pawn ticket dated August 19, 1987. The rifle was retrieved from a Jacksonville gun and pawn shop.
Jones offered no evidence during the guilt phase. The jury returned guilty verdicts on all charges.
During the penalty phase, Jones presented the testimony of Dr. Harry Krop, a forensic psychologist, who diagnosed Jones as having a borderline personality disorder. He testified that Jones's stepmother described Jones as "almost like an animal." At the age of eleven, Jones was hospitalized for three weeks for psychiatric treatment. He was diagnosed as a borderline schizophrenic due to his difficulty dealing with reality and his environment. After his release from the hospital, a court adjudicated Jones dependent, later delinquent, and finally referred him to a children's home.
The court instructed the jury on three aggravating[4] and three mitigating circumstances,[5] and the jury recommended the death sentence for both murders by a vote of eleven to one. As to each murder, the trial court found two aggravating circumstances *1237  that the murders were committed for pecuniary gain and committed in a cold, calculated, and premeditated manner. The court found no mitigating circumstances and sentenced Jones to death.

Guilt Phase
Jones raises five claims of error in the guilt phase of his trial. As his initial claim, Jones contends that the trial court should have suppressed the statements which he gave to Lieutenant Hord on August 17 and 20 because the state denied his request for counsel.
We agree with Jones that if he requested counsel, his subsequent statements to the police authorities must be suppressed. However, the necessary factual basis for relief has not been established. Jones testified at the suppression hearing that he requested counsel when he was arrested in Mississippi by Trooper Haldeman, and again on two subsequent occasions  when he was questioned by Mississippi Investigator Edwards concerning the warrant on the pickup and when he was first interviewed by the Putnam County officers. This testimony conflicts with the testimony of Trooper Haldeman, Detective Stout, and Lieutenant Hord.[6] It also conflicts with Jones's written statements of August 17 and 20, wherein he represented that he neither requested advice from, nor the presence of, an attorney during or at any time before he made the statement. In addition, Jones had the opportunity to review his statements after they were typed. Although he initialed thirty-six changes in the two statements, he made no changes to his stated waiver of counsel. The trial court denied the motion to suppress, specifically finding that whether Jones requested counsel was a question of credibility which it resolved in favor of the state. Based on the totality of this record, the trial judge did not abuse his discretion, and we find no error on this point.
Second, Jones claims error because he was not present during all the voir dire proceedings. He argues that the record fails to demonstrate that he effectively waived his presence during counsel's exercise of peremptory challenges at side-bar conferences. Although there is no indication that Jones was in attendance at the side-bar, the record demonstrates that the court gave defense counsel the opportunity to confer with Jones prior to every side-bar and that Jones had the opportunity to decide which jurors would be stricken from the panel. See Turner v. State, 530 So.2d 45, 49-50 (Fla. 1987) (following remand), cert. denied, 489 U.S. 1040, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989). We find no error. Likewise, we reject the claim that Jones should have been present during the court's inquiry into a conversation between Juror McKinney and a bailiff.[7]
Jones's third point on appeal is that the conviction for sexual battery must be reversed because a victim of sexual battery must have been alive at the time of the assault to support the elements of this crime. We agree. See Owen v. State, 560 So.2d 207, 212 (Fla. 1990) (the victim must be alive at the time the offense commences), petition for cert. filed, No. 90-231 (U.S. July 31, 1990). The evidence here clearly establishes that the acts constituting sexual battery occurred after the victim's death. Thus, Jones's conviction for sexual battery must be reversed. Jones does not argue and we do not find that the conviction on this count affected the guilty verdicts on the murder counts.
Fourth, Jones challenges the admission of DNA identification testimony as lacking an adequate predicate. At trial, counsel objected to the testimony of an expert who, *1238 through DNA sampling, identified Jones as the individual who sexually assaulted Perry. Even if it could be said that such testimony was improperly admitted, we find beyond a reasonable doubt that the error would not have affected the verdict and is harmless. Of course, the sexual battery charge is being reversed on other grounds.
Finally, we find no merit to Jones's claim that reversal is mandated because the trial judge failed to comply with section 921.241(1), Florida Statutes (1987), which requires the judge to affix the defendant's fingerprints to a judgment of guilt.
For the reasons expressed, we affirm Jones's two convictions for first-degree murder and convictions on Counts III, IV, and V. We find that each is supported by competent substantial evidence. We reverse the conviction for sexual battery.

Penalty Phase
Jones asserts several errors pertaining to the imposition of the death penalty. First, Jones contends that section 921.141(2), Florida Statutes (1987), and the federal constitution require jurors to use a special verdict form and to unanimously agree upon the existence of the specific aggravating factors applicable in each case. We have previously decided this question adversely to Jones's position. James v. State, 453 So.2d 786, 792 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984); Alvord v. State, 322 So.2d 533, 536 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976).
Similarly, Jones's contention that the death penalty statute is unconstitutional because it is arbitrarily applied has been consistently rejected by the Court. See Remeta v. State, 522 So.2d 825, 829 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988), and cases cited therein.
We likewise reject Jones's argument that the trial court improperly found two aggravating factors  that the murders were committed for pecuniary gain[8] and in a cold, calculated, and premeditated manner.[9] We are satisfied that this record supports the conclusion beyond a reasonable doubt that Jones murdered for the specific purpose of taking Brock's pickup and did so in a cold, calculated, and premeditated manner. Prior to the murder, as the victims slept, Jones discussed killing the victims for the purpose of obtaining the pickup. Jones's statement of August 20 admits that he and Reesh "hung out talking about waking them up for about a half hour... . [W]e walked up the road ... [and] walked back down. Five or ten minutes went by and we went and got the gun [from behind a log where it was hidden]." We find adequate support for the trial court's finding that these two aggravating factors existed.
However, we agree with Jones that the trial court erred by instructing the jury that the murder was especially heinous, atrocious, or cruel.[10] The record reflects no evidentiary support for this instruction. We are mindful that the trial court did not make a factual finding of this factor in his sentencing order. In many cases, this would obviate any error. However, here we must consider this instruction in tandem with the erroneous charge of sexual battery. Acts performed on a dead body cannot be considered in determining whether the aggravating factor of heinous, atrocious, or cruel applies. Events occurring after death are irrelevant to the atrocity of the homicide, regardless of their depravity and cruelty. Pope v. State, 441 So.2d 1073, 1078 (Fla. 1983); see also State v. McCall, 524 So.2d 663, 665 n. 1 (Fla. 1988); Halliwell v. State, 323 So.2d 557, 561 (Fla. 1975). In this case, the jury heard evidence and argument that after Jones killed Perry, he sexually abused the corpse. The jury could have believed that such an act was sufficient to find that the killing was heinous, atrocious, or cruel and *1239 thus supported the death penalty. We cannot say under these facts that the error was harmless under the standard announced in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Sixth, Jones contends that the trial court allowed family members to identify the victims in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and Welty v. State, 402 So.2d 1159 (Fla. 1981), and for that reason he seeks a new sentencing recommendation. In Booth, the United States Supreme Court held invalid, as violative of the eighth amendment, a Maryland statute which required consideration of victim impact statements by the capital sentencing jury. Booth recognized that the presentation of an emotionally charged opinion expressing grief and anger is inconsistent with the requirement for individualized sentencing and reasoned decisionmaking. Booth, 482 U.S. at 504, 107 S.Ct. at 2533. The personal characteristics of the victim and emotional trauma suffered by the victim's family are wholly unrelated to the defendant's blameworthiness and thus create an impermissible risk of an arbitrary capital-sentencing decision. Id. at 502-03, 107 S.Ct. at 2532-33.
These same concerns were addressed by this Court on the issue of guilt well before Booth in Welty. Welty reasserted the well-established rule that "a member of the deceased victim's family may not testify for the purpose of identifying the victim where nonrelated, credible witnesses are available to make such identification." Welty, 402 So.2d at 1162; see also Lewis v. State, 377 So.2d 640 (Fla. 1979); Rowe v. State, 120 Fla. 649, 163 So. 22 (1935); Ashmore v. State, 214 So.2d 67 (Fla. 1st DCA 1968); Hathaway v. State, 100 So.2d 662 (Fla. 3d DCA 1958). Although the testimony here is somewhat different from that which occurred in Booth,[11] we conclude that the guilt phase identification of the victims by Brock's sister and brother and Perry's sister, in violation of Welty, created an equal risk of an arbitrary capital-sentencing decision.
A verdict is an intellectual task to be performed on the basis of the applicable law and facts. It is difficult to remain unmoved by the understandable emotions of the victim's family and friends, even when the testimony is limited to identifying the victim. Thus, the law insulates jurors from the emotional distraction which might result in a verdict based on sympathy and not on the evidence presented.
Here, none of the relatives' testimony was necessary to establish the identity of the victims. It is apparent that such testimony was impermissibly designed to evoke the sympathy of the jury. We find that the trial court abused its discretion by denying Jones's objections to this testimony.
Seventh, Jones contends that the trial court improperly prevented him from arguing that he could be sentenced to two consecutive minimum twenty-five-year prison terms on the murder charges should the jury recommend life sentences. The state argues that this claim was speculative because the actual sentencing decision is purely within the province of the court, not the jury.
The standard for admitting evidence of mitigation was announced in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The sentencer may not be precluded from considering as a mitigating factor, "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id. at 604, 98 S.Ct. at 2965. Indeed, the Court has recognized that the state may not narrow a sentencer's discretion to consider relevant evidence "that might cause it to decline to impose the death sentence." McCleskey v. Kemp, 481 U.S. 279, 304, 107 S.Ct. 1756, 1773, 95 L.Ed.2d 262 (1987) (emphasis in original; footnote omitted). Counsel was entitled to *1240 argue to the jury that Jones may be removed from society for at least fifty years should he receive life sentences on each of the two murders. The potential sentence is a relevant consideration of "the circumstances of the offense" which the jury may not be prevented from considering.
We likewise find merit in Jones's contention that the state improperly commented on his lack of remorse. During closing argument in the guilt phase, the prosecutor impermissibly asked the jury, "Did you see any remorse?" This argument was augmented and highlighted during the penalty phase when the state called a Sheriff's Department officer for the express purpose of testifying that Jones showed no remorse. In each instance, defense counsel's objections were overruled.
This Court has repeatedly stated that lack of remorse has no place in the consideration of aggravating circumstances. Robinson v. State, 520 So.2d 1, 6 (Fla. 1988); Pope, 441 So.2d at 1078; McCampbell v. State, 421 So.2d 1072, 1075 (Fla. 1982). We emphatically held in Pope that lack of remorse should have no place in the consideration of aggravating factors. Pope, 441 So.2d at 1078. We again urge the state to refrain from injecting an issue that this Court has unequivocally determined to be inapplicable, causing us to vacate sentences in the past.
In summary, we have found that the trial court erred by instructing the jury that the murder was especially heinous, atrocious, or cruel; by admitting testimony in violation of Booth; by preventing the jury from considering the potential sentence of imprisonment; and by permitting the state to introduce evidence of lack of remorse. We conclude that these penalty phase errors require a new sentencing hearing before a new sentencing jury. Accordingly, we find it unnecessary to reach Jones's ninth claim, that the trial court improperly denied defense counsel's request to withdraw during the penalty phase due to a conflict of interest.
Finally, Jones raises a claim of double jeopardy, arguing a violation of Carawan v. State, 515 So.2d 161 (Fla. 1987). Jones argues that two crimes, burglary of a conveyance while armed and/or with an assault and shooting or throwing a deadly missile into an occupied vehicle, seek to punish the same evils as robbery and murder. He concludes that separate sentences for the burglary of a conveyance and shooting into an occupied vehicle cannot be countenanced because each arose out of a single act, and to separately punish him for those crimes offends the principles announced in Carawan.
Carawan construed section 775.021, Florida Statutes (1985), and determined that there could not be multiple convictions for attempted manslaughter and aggravated battery when they were predicated on a single shotgun blast. The state contends, in part, that Carawan is inapplicable because the legislature overruled that decision when it enacted section 775.021, Florida Statutes (Supp. 1988). However, we conclude that Carawan's "same evil" analysis is applicable because this case was in the pipeline when Carawan became final.[12]
We find that there is no impediment under Carawan to sentencing Jones for the two murders and for shooting into an occupied motor vehicle. Jones fired three shots, each of which was a separate act. One shot killed Brock and another killed Perry. The third shot would support the conviction and sentence for shooting into the vehicle and consequently may be punished as an evil separate from the murders. Moreover, we find that there is no violation for sentencing Jones for armed robbery and burglary of a conveyance with intent *1241 to commit either murder or robbery. Jones twice entered the pickup truck while armed. On the first occasion he removed the victims. On the second, he took the vehicle. We conclude that the offenses in question are predicated on multiple underlying acts, and that Jones may be sentenced on each. Carawan, 515 So.2d at 170.
Accordingly, for the reasons expressed, we affirm the two convictions for first-degree murder and the convictions for armed robbery, burglary of a conveyance, and shooting into an occupied vehicle. We reverse the conviction for sexual battery, vacate the two sentences of death, and remand for a new sentencing determination before a new jury.
It is so ordered.
SHAW, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs with conviction, and concurs in result only with the sentence.
NOTES
[1] Our jurisdiction is mandatory. Art. V, § 3(b)(1), Fla. Const.
[2] Count III, armed robbery (nine-year term of imprisonment to run concurrent with Count VII); Count IV, burglary of a conveyance while armed and/or with assault (seven-year term of imprisonment to run concurrent with Count VII); Count V, shooting or throwing a deadly missle into occupied vehicle (three-and-one-half-year term of imprisonment to run concurrent with Count VII); and Count VII, sexual battery (seventeen-year term of imprisonment).

The state elected to proceed on Count III (armed robbery) and not the lesser included Count VI (grand theft in the second-degree).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The murders were committed during the commission of a robbery and/or burglary, the murders were especially wicked, evil, atrocious, or cruel, the murders were committed in a cold, calculated, and premeditated manner.
[5] The jury could consider that the defendant had no significant history of prior criminal activity, the defendant's age, and any other aspect of the defendant's character.
[6] Trooper Haldeman testified at trial that he read Jones his Miranda rights at the scene of the stop. Upon asking Jones if he wished to talk, the trooper indicated that Jones "didn't say anything."
[7] After it became necessary to move Juror McKinney from a position as alternate to a full member of the jury, the judge informed both counsel that Juror McKinney had told the bailiff that she might have known Detective Stout and some of the victims' relatives. The judge summoned Juror McKinney and counsel to a side-bar conference. There is no record evidence that Jones objected at trial to Juror McKinney's service on the panel or was precluded from conferring with his counsel or the court.
[8] § 921.141(5)(f), Fla. Stat. (1987).
[9] § 921.141(5)(i), Fla. Stat. (1987).
[10] § 921.141(5)(h), Fla. Stat. (1987).
[11] In Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), the victim impact statements were introduced during the penalty phase and related to impact of the crimes upon the surviving family members. Here, the testimony occurred during the guilt phase and was directed largely toward identity of the victims.
[12] In State v. Smith, 547 So.2d 613, 617 (Fla. 1989), this Court held that the legislature overruled Carawan v. State, 515 So.2d 161 (Fla. 1987), by enacting chapter 88-131, section 7, Laws of Florida. That section became effective on July 1, 1988. However, Carawan continued to apply from December 10, 1987, when rehearing was denied, until July 1, 1988. Thus, Carawan controls this case because the notice of appeal was filed on May 19, 1988. See Dougan v. State, 470 So.2d 697, 701 n. 2 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 900 (1986); State, Department of Transp. v. Knowles, 402 So.2d 1155, 1157 (Fla. 1981).