845 So.2d 55 (2003)
Randall Scott JONES, Appellant,
v.
STATE of Florida, Appellee.
Randall Scott Jones, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC00-1492, SC01-2424.
Supreme Court of Florida.
February 13, 2003.
Rehearing Denied May 2, 2003.
*59 Robert T. Strain, Assistant CCRC, and Elizabeth A. Williams, Staff Attorney, Law *60 Office of the Capital Collateral Regional Counsel-Middle Region, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Carol M. Dittmar, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Randall Scott Jones appeals the denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Jones also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons set forth below, we affirm the trial court's order denying Jones's motion for postconviction relief and deny Jones's petition for a writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
In 1988, Jones was convicted and sentenced to death for the first-degree murders of Matthew Paul Brock and Kelly Lynn Perry.[1] The underlying facts were detailed in this Court's opinion in Jones's first direct appeal:[2]
During the evening of July 26, 1987, Jones and his codefendant, Chris Reesh, went target shooting with a 30-30-caliber rifle near Rodman Dam in Putnam County. Jones's car became stuck in the sand pits. At about midnight, they flagged down a fisherman who was leaving the area and asked if he could pull them out. The fisherman indicated that he could not but told them to seek help from the driver of a Chevrolet pickup truck parked in the parking lot. Inside the cab of the pickup Matthew Paul Brock and Kelly Lynn Perry were sleeping.
Between 12:30 and 1:30 a.m., a twelve-year-old boy who was camping at the Rodman Dam Campground awoke to the sound of three gunshots fired in rapid succession. Later that morning, a Rodman Dam concession worker noticed cigarette packets, broken glass, and blood in the parking lot. She followed a trail of blood and drag marks across the parking lot for about 160 yards to a wooded area where she discovered Brock's body lying in the underbrush. She called the Putnam County Sheriff's Office. During the search of the area, deputies discovered Perry's partially clothed body about twenty-five feet deeper into the underbrush.
At trial, Dr. Bonofacia Flora, a forensic pathologist, testified that Brock died instantly from two wounds to the head from a high-powered rifle. Perry died from a single shot to the forehead, also caused by a high-powered rifle.
Matthew Brock's brother and sister-in-law testified to having seen the victim's pickup, while in Jones's possession, parked at a convenience store in Green Cove Springs at approximately 7 a.m. on July 27. They observed bullet holes in the windshield and a 30-30-caliber rifle inside. Richard Brock confronted Jones, who was a stranger to him, and asked him where he got the truck. *61 Jones told him he had just purchased the truck for $4,000 and drove away.
On August 16, Jones was arrested in Kosciusko, Mississippi, by the Mississippi Highway Patrol for possession of a stolen motor vehicle. The next day, Detective David Stout and Lieutenant Chris Hord of the Putnam County Sheriff's Office interviewed Jones in Mississippi. Lieutenant Hord testified that after advising Jones of his Miranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] rights, Jones gave a statement implicating himself at the scene but blaming Reesh for having shot both victims. Jones admitted driving the pickup to Mississippi, where he planned to get rid of it. In addition to signing a waiver-of-rights form, Jones also signed a consent to search the trailer in which he had been living at the Lighthouse Children's Home in Mississippi. In the trailer, Detective Stout recovered pay stubs from Perry's employer in Palatka bearing her fingerprint. A calendar bearing Perry's name was also recovered from the bottom of a nearby dumpster.
On August 20, Jones was transported from Mississippi to Florida. Lieutenant Hord testified that at the outset of the trip, he reminded Jones that his Miranda rights were still in effect. Jones then volunteered a second statement which was reduced to writing and signed after their arrival at the Putnam County jail. In this statement, Jones admitted that his earlier statement was true, except that he had reversed his and Reesh's roles in the murder.
The state's case was completed with the testimony of Rhonda Morrell, who was Jones's ex-fiancee. She testified that Jones had told her that he had taken her father's rifle for target shooting and that "he had shot those two people. He didn't remember doing it, but he had done it." She also testified that Jones had told her that he had pawned the rifle, and she identified Jones's signature on a pawn ticket dated August 19, 1987. The rifle was retrieved from a Jacksonville gun and pawn shop.
Jones offered no evidence during the guilt phase. The jury returned guilty verdicts on all charges.
During the penalty phase, Jones presented the testimony of Dr. Harry Krop, a forensic psychologist, who diagnosed Jones as having a borderline personality disorder. He testified that Jones's stepmother described Jones as "almost like an animal." At the age of eleven, Jones was hospitalized for three weeks for psychiatric treatment. He was diagnosed as a borderline schizophrenic due to his difficulty dealing with reality and his environment. After his release from the hospital, a court adjudicated Jones dependent, later delinquent, and finally referred him to a children's home.
The court instructed the jury on three aggravating [Note 4] and three mitigating circumstances, [Note 5] and the jury recommended the death sentence for both murders by a vote of eleven to one. As to each murder, the trial court found two aggravating circumstancesthat the murders were committed for pecuniary gain and committed in a cold, calculated, and premeditated manner. The court found no mitigating circumstances and sentenced Jones to death.
[Note 4] The murders were committed during the commission of a robbery and/or burglary, the murders were especially wicked, evil, atrocious, or cruel, the murders were committed in a cold, calculated, and premeditated manner.

*62 [Note 5] The jury could consider that the defendant had no significant history of prior criminal activity, the defendant's age, and any other aspect of the defendant's character.
Jones I, 569 So.2d at 1235-37 (footnote 3 omitted).[3]
In Jones's new penalty phase, the jury voted ten to two for a recommendation of death with regard to each murder. We upheld the two sentences of death imposed upon resentencing. See Jones II, 612 So.2d at 1376.[4]
Jones's amended initial 3.850 motion, filed in 1997, is the subject of this appeal. Jones's motion contained thirty claims.[5] *63 After a Huff[6] hearing, the postconviction judge granted an evidentiary hearing on claim XXIX (whether the trial judge impermissibly delegated his sentencing authority to the State). After an evidentiary hearing, relief was denied for claim XXIX. Relief as to all other claims was summarily denied. Relief was denied because (1) Jones failed to plead his claims properly; (2) Jones failed to establish prejudice; and (3) Jones's claims were procedurally barred. Jones appeals the denial of relief as to twenty-five claims.[7]

3.850 APPEAL
In his first issue,[8] Jones asserts that the trial judge improperly delegated his sentencing authority to, and engaged in improper ex parte contact with, the State. Jones contends that the trial judge allowed the State to write the sentencing order[9] and did not engage in the required independent weighing of aggravating and mitigating circumstances. Moreover, Jones argues that on the whole the evidence produced at the evidentiary hearing on this claim establishes that the trial judge engaged in improper contact with the State during the sentencing proceeding. We disagree. As noted by the postconviction judge,[10] Jones produced no direct evidence that the prosecutor in his resentencing, and not the trial judge, wrote the sentencing order. Jones's assertion that the trial judge engaged in improper contact with the State is also unsupported.
While evidence presented at the evidentiary hearing[11] established that the prosecutor in Jones's initial sentencing proceeding, Mac McLeod, wrote the sentencing order without substantial input from the trial judge, the prosecutor in Jones's resentencing, Richard Whitson, testified without qualification that he did not write the sentencing order when Jones was resentenced. Moreover, Whitson provided a plausible explanation as to why he possessed, and had made a marginal comment on, a copy of a proposed sentencing order: The trial judge had likely circulated drafts of the proposed order to both the State and defense, seeking their comments.[12] Such a circumstance is not the *64 same as allowing one side to write the sentencing order and does not, without more, constitute evidence of improper ex parte contact. Jones's assertions with regard to these points are ultimately based on speculation. Postconviction relief cannot be based on speculative assertions. See Maharaj v. State, 778 So.2d 944, 951 (Fla.2000).
The denial of relief was also proper with regard to the involvement of the trial judge's law clerk in Jones's resentencing proceedings. The law clerk, Pamela Koller, testified at the evidentiary hearing that she produced an initial draft of portions of a sentencing order during Jones's resentencing proceedings, and that she might have used as a "starting point" portions of the order[13] originally entered after Jones's initial sentencing proceeding. Jones claims that Koller's involvement in drafting portions of a sentencing order conclusively establishes that the trial judge did not engage in the required independent weighing of aggravating and mitigating circumstances. As further support, he notes the similarities between the sentencing orders for his initial and resentencing proceedings and contends that they buttress the conclusion that the trial judge did not engage in the required independent weighing. We disagree as to both points.
Jones failed to offer competent evidence that the trial judge did not engage in independent weighing of aggravators and mitigators. The draft version of the order in the resentencing proceeding, drafted initially by Koller at the instruction of the trial court, is not identical to the version signed and entered by the original trial judge. Most important, the sentencing order signed by the trial judge pursuant to Jones's resentencing in 1991 differs significantly from the order signed after Jones's initial sentencing proceeding in 1988. For instance, the 1988 order, with regard to the murder of victim Brock, finds only pecuniary gain as an aggravating factor; the 1991 order discusses both pecuniary gain and armed robbery as aggravating factors and subsequently merges them into a single aggravator. Moreover, the 1988 order does not contain the discussion of specific nonstatutory mitigating circumstances which is present in the 1991 order. Given these significant dissimilarities between the two orders, we determine that the postconviction judge did not err in concluding that the trial judge independently considered the aggravating and mitigating factors in Jones's case. See Morton v. State, 789 So.2d 324, 332-35 (Fla. 2001) (noting that distinctions between initial sentencing order issued by one judge and subsequent order issued by different judge in resentencing provided sufficient indicia that judge in resentencing proceeding undertook independent weighing of aggravators and mitigators despite presence of some similarities between initial sentencing order and resentencing order).[14] One would reasonably expect that orders relating to the same or similar evidence would, of necessity, be somewhat similar. *65 However, the similarities in the orders in the instant case are not such that relief should be granted. We also determine that the trial judge did not err in concluding that Koller did not engage in improper ex parte communication with the State. Jones's assertions with regard to Koller are based on nothing more than speculation. No relief is warranted. See Maharaj, 778 So.2d at 951.
The next issue[15] Jones presents is that his counsel was ineffective for failing to confer with the court-appointed confidential mental health expert, Dr. Krop, with regard to Jones's competency to waive his Miranda[16] rights and his right to an extradition hearing. Jones further argues that his defense counsel should have consulted with Dr. Krop with regard to Jones's competency to give consent for the search of his trailer in Mississippi, where police seized inculpatory evidence.[17] We disagree and determine that the trial judge did not err in denying an evidentiary hearing. Jones's defense counsel was not ineffective with regard to these matters.
Pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a successful assertion of ineffective assistance of counsel must satisfy two prongs. Under the first prong, the defendant must show that counsel was deficient, i.e., "the defendant must show that counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms." Ragsdale v. State, 798 So.2d 713, 715 (Fla. 2001). Under the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. To be entitled to an evidentiary hearing on a claim of ineffective assistance, the defendant must allege specific facts that are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant. See Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990). A mere conclusory allegation of ineffective assistance is insufficient to warrant an evidentiary hearing. See Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). Reasonable strategic decisions of trial counsel should not be second-guessed by a reviewing court. See Strickland, 466 U.S. at 689-91, 104 S.Ct. 2052.
To the extent that Jones asserts the ineffectiveness of his trial counsel on this issue, the postconviction judge's determination that a procedural bar existed as to the relevant claims is incorrect. The ineffectiveness of Jones's counsel at his resentencing was not considered or determined on direct appeal.[18] Nevertheless, *66 the record refutes Jones's contention that he was entitled to an evidentiary hearing. In response to questions from Jones's counsel during direct examination in the resentencing phase, Dr. Krop (the confidential mental health expert) testified as follows:
JONES'S COUNSEL: I think that certain things should be made clear. Is it not true that Randy Jones, at the date of the commission of the offense, was not insane, as that term is legally understood?
DR. KROP: That's right. He knew right from wrong.
JONES'S COUNSEL: And, from that day to this, he has not suffered from an incompetence, mental incompetence, to stand trial, to understand the proceedings which have been brought against him?
DR. KROP: That's right.
Jones's trial counsel had no reason to challenge the waiver of rights on competency grounds. Dr. Krop had considered and determined Jones's competency from the time he perpetrated the killings and at all points thereafter, which necessarily included the time at which Jones waived his Miranda and other rights.[19] There is no reason to even suspect that competency was an issue based on the expert conclusions. Therefore, trial counsel's decision not to challenge the waiver based on Jones's competency was not unreasonable.[20]
The record does demonstrate that trial counsel did challenge Jones's waiver of his rights based on the lack of voluntariness. The record establishes that counsel filed a motion to suppress Jones's inculpatory statements along with evidence from a search (to which Jones had consented) of a trailer in Mississippi where incriminating evidence was found. Trial counsel also deposed Jones's primary interrogators to explore the voluntariness of his statements, requested and received a suppression hearing at which he again questioned Jones's interrogators, and subsequently moved after formal trial proceedings had begun to suppress incriminating statements and physical evidence. The trial court denied the motions to suppress. It appears that, in the end, Jones's claim of ineffective assistance of counsel is an expression of frustration concerning the result of his trial. Such frustration is not a viable basis for granting postconviction relief. See Teffeteller v. Dugger, 734 So.2d 1009, 1019-20 (Fla.1999). In Teffeteller, we determined that no evidentiary hearing was warranted on the alleged failure of counsel to litigate properly the issue of suppression of the defendant's inculpatory *67 statements (made after waiving Miranda rights) and physical evidence obtained after the defendant consented to a police search of his vehicle. We noted
that trial counsel filed several motions to suppress Teffeteller's statements and the evidence obtained from the search of his vehicle ..., that a hearing was conducted on the motions, and that counsel objected to the introduction of [this] evidence at trial. Thus, trial counsel vigorously litigated these issues and his performance was not deficient in this regard.
Id. (footnote omitted). Circumstances similar to Teffeteller obtain in the instant case. Based on Teffeteller, the assistance rendered by counsel in the instant case was not deficient.[21] The postconviction judge properly denied an evidentiary hearing.
Jones next claims that his counsel was ineffective during voir dire for not preventing the State from making overly prejudicial comments and for not moving for a mistrial.[22] Specifically, he contends that the prosecutor informed prospective jurors that they were required to recommend a sentence of death if they found Jones guilty of murder. Our review of the record fails to confirm that the prosecutor engaged in such conduct. The strongest phraseology employed by the prosecutor was his line of questioning in which he asked prospective jurors whether they could vote to recommend the death penalty "if the facts, circumstances, and the law warrant it." This line of questioning is not a significant deviation from the standard jury instructions.[23] Moreover, during voir dire the trial judge properly instructed prospective jurors that their role was to "decide whether or not to recommend one of two available sentences," one being "the death penalty, which is a recommendation, the second [being] life imprisonment with a minimum of twenty-five years." Jones's counsel was not ineffective during voir dire, nor did Jones suffer any prejudice. No evidentiary hearing was warranted. We further note that the postconviction judge properly determined that Jones's claim that the prosecutor engaged in misconduct during voir dire was procedurally barred because it should have been presented on direct appeal.
Jones also asserts that his rights under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), were *68 violated.[24]Ake requires that a defendant have access to a "competent psychiatrist [or other mental health professional] who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83, 105 S.Ct. 1087. This Court has stated that one of the most compelling indications for granting an evidentiary hearing on an Ake claim occurs when one or more of a defendant's mental health experts "ignore[s] clear indications of either mental retardation or organic brain damage." State v. Sireci, 502 So.2d 1221, 1224 (Fla.1987). In Mann v. State, 770 So.2d 1158 (Fla.2000), the appellant (Mann), who had been sentenced to death for a capital murder, claimed that he was entitled to an evidentiary hearing on his postconviction Ake claim. In upholding the denial of the evidentiary hearing, we stated:
The record reveals that Carbonel [Mann's confidential mental health expert] performed an extensive evaluation of Mann that included neuropsychological testing based on his history of serious alcohol and substance abuse and his history of head injury. Carbonel testified that, in addition to interviewing Mann, she reviewed numerous documents including affidavits from family members, Mann's childhood health records, records from correctional institutions, hospital records, and expert testimony from prior proceedings. Carbonel also testified that she did a lengthy psychological evaluation of Mann and conducted various tests including a Minnesota Multiphasic Personality Inventory (MMPI) and a Wechsler Adult Intelligence Scale test, among others. Based on this evaluation, Carbonel was able to testify to the existence of the two statutory mental mitigators.
The record demonstrates that Mann's expert performed all the essential tasks required by Ake. Thus, Mann's request for an evidentiary hearing was properly denied.
Id. at 1164. The mental health evaluation detailed above is substantially the same as that provided Jones in the instant case. Specifically, Dr. Krop testified during Jones's resentencing that he administered a battery of tests similar to those detailed in Mann.[25] Equally important, Dr. Krop related not only that Jones suffered from no severe brain damage, but also that brain damage did not contribute to his actions on the day of the murders. Furthermore, he stated that Jones has an IQ of 107. Thus, the record refutes any suggestion that Dr. Krop ignored the type of serious brain damage or mental retardation we detailed in Sireci. An evidentiary hearing on this portion of the Ake claim was properly denied.
Jones further presents the related argument that his rights under Ake were violated due to his trial counsel's ineffectiveness in failing to provide Dr. Krop with necessary background information required for a competent mental health examination.[26] We disagree. The *69 record establishes that Dr. Krop had access to copious amounts of information concerning Jones's background[27] and that he thoroughly reviewed this information and detailed it for the jury during Jones's resentencing. We also note that Jones's counsel consulted with Dr. Krop as to what information he required to perform a thorough mental health examination, and that counsel assisted in garnering the required information. We therefore cannot conclude that Jones's counsel was deficient in this regard. Moreover, we cannot agree with Jones's assertion that trial counsel's failure to call his sister, Trudy, as a witness during the resentencing phase constituted ineffective assistance. Jones avers that during the first four or five years of his life, Trudy (who had barely reached adolescence) was his primary caregiver, due to the neglect visited upon him by his mother while he was in her custody. He fails to note, however, that Dr. Krop related to the jury his diagnosis of Jones as having borderline personality disorder, and that he incorporated and included in his analysis Jones's memories of being very unhappy when he lived with his mother and of spending a lot of time, unsupervised, in the street. Dr. Krop testified that Jones's "emotionally deprived and neglectful early environment ... set a pattern for the rest of his life," and that in his subsequent years Jones had trouble "compensat[ing] for that early neglect." Moreover, Dr. Krop stated that although "behavior problems" were a constant theme in Jones's life, his tendencies toward "animalistic" or "primitive" behavior[28] "improved somewhat" when Jones was placed in the custody of his father and stepmother around age five or six. Thus, the jury was not uninformed about Jones's life before the age of five. We determine that the testimony of his sister, Trudy, would not have changed the ten-to-two recommendation of a death sentence for Jones.[29] Our *70 confidence in the outcome of the penalty phase is not undermined. Therefore, no relief is warranted.[30]
We consider next the issue presented by Jones as to whether his trial counsel was ineffective during the guilt phase closing argument because he allegedly conceded Jones's guilt on charges of premeditated murder without first subjecting those charges to an adversarial testing and, most important, without obtaining Jones's consent.[31] We note that the record clearly refutes Jones's contention that his trial counsel conceded guilt to charges of premeditated murder. When he addressed the jury, Jones's counsel did state that "the evidence prove[d] beyond a reasonable doubt that Randy Scott Jones killed Kelly Lynn Perry and Matthew Paul Brock." However, trial counsel proceeded to argue that the trial judge would "define... the crimes involved and their lesser, what are called lesser included offenses." Jones's counsel then stated:
Let me read to you, if I may, the definition of second degree murder from those instructions, which you will hear from the Judge.... "A person commits second degree murder by an act imminently dangerous to another and evincing a depraved mind regardless of human life." Ladies and Gentlemen, I submit to you that beyond doubt at the time and place where these killings occurred and the other lesser crimes were committed that Randy Jones did in fact evince a depraved mind regardless of human life and his conduct throughout the episode indicates a depraved and evil intent and inability to understand the feelings of other people, an inability to relate with other people, but I think that specifically blueprints this crime as second degree murder.

(Emphasis supplied.) Taken in its whole context, the above argument is nothing more than a "concession ... made to a lesser crime than charged ... after a meaningful adversarial testing[32] of the State's case." Atwater v. State, 788 So.2d *71 223, 231 (Fla.2001). Jones's counsel conceded guilt to second-degree murder as "a trial strategy intended to save [Jones's] life." Id. at 232. Jones's argument would require counsel to present arguments with no credibility and contrary to fact to satisfy his theory of representation. We decline to follow such a path. We have previously determined that:
"[t]o be effectual, trial counsel should be able to do this without express approval of his client and without risk of being branded as being professionally ineffective because others may have different judgments or less experience."
Id. at 230 (quoting McNeal v. State, 409 So.2d 528, 529 (Fla. 5th DCA 1982)). We therefore conclude that "the trial court properly denied [Jones's] claim that defense counsel was ineffective for making certain concessions without [Jones's] consent." Atwater, 788 So.2d at 232.
Jones next claims that his counsel was ineffective because he labored under conflicts of interest which prevented him from rendering impartial advice.[33] Specifically, Jones contends that both his counsel's status as an honorary deputy sheriff[34] and counsel's motion to withdraw from representation affected the quality of representation that he received to the point that it became substandard. We addressed much of this issue in the direct appeal of Jones's resentencing, noting that Jones's counsel had resigned from his position as an honorary deputy sheriff before the resentencing proceeding commenced.[35] We determined that counsel was not ineffective in his representation at points prior to the resentencing proceeding. See Jones II, 612 So.2d at 1372-74. Furthermore, we noted that Jones could allege ineffectiveness of counsel in the resentencing phase in a motion for postconviction relief. No error occurred in the postconviction judge's decision to deny an evidentiary hearing on this matter. Jones could not establish the requisite prejudice under Strickland because his counsel had resigned from the honorary deputy sheriff position before resentencing proceedings had begun. Nor did counsel's representation during the resentencing "f[a]ll below an objective standard of reasonableness" based on "prevailing professional norms." Ragsdale v. State, 798 So.2d 713, 715 (Fla. 2001). No relief is warranted on this issue.[36]
In his next issue, Jones asserts violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[37] Jones contends that the State violated Brady by failing to disclose that it had *72 made a deal with witness Eddie Tipton, who testified during Jones's initial sentencing phase but not during Jones's resentencing. The postconviction judge denied the claim as insufficiently pled. This decision was not erroneous.
Jones presented no reliable evidence in his 3.850 motion that the State made a deal with Tipton either before or during Jones's trial. The only "evidence" Jones presents of a deal between the State and Tipton is a July 1988 letter from the state attorney's office to the trial judge in an unrelated case in which Tipton was a defendant. Jones's trial had concluded before this letter was written. The letter recommended a reduced sentence for Tipton due to his favorable testimony in Jones's case. Tipton stated under oath at Jones's initial sentencing phase, after being questioned both by Jones's counsel and by the State, that he did not have a deal with the State to provide favorable testimony in Jones's case. Jones also received a new sentencing phase at which Tipton did not even testify. Moreover, during Jones's resentencing it was his trial counsel who asked Dr. Krop, the mental health expert, about Tipton's previous testimony in an attempt to shed the most mitigating light on Jones's mental state at the time of the murders. Given these facts, it is clear that Jones cannot establish prejudice under Brady and that he is entitled to no relief.
Jones's other Brady issue requires little discussion. He contends that the State violated Brady by failing to disclose its knowledge of Jones's possible substance abuse. This claim is entirely misplaced because no one was in a better position to know if Jones had a substance abuse problem than Jones himself. "[A] Brady claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant." Occhicone v. State, 768 So.2d 1037, 1042 (Fla. 2000). We further reject Jones's contentions of ineffective assistance with regard to the Brady issue as lacking in merit.
With regard to many of the remaining claims Jones presents, the postconviction judge correctly determined that they were procedurally barred.[38] Jones contends that ineffective assistance of counsel occurred with regard to a few of these claims, and we briefly address that aspect. Jones first asserts that his counsel was ineffective for not challenging the jury instructions with regard to the aggravators of cold, calculated, and premeditated (CCP), commission in the course of a robbery, and pecuniary gain.[39] For each of these aggravating circumstances, the instruction given to the jury conformed to the approved standard jury instruction. No relief is due because "[c]ounsel cannot be deemed ineffective for failing to prevail on a meritless issue." Teffeteller, 734 So.2d at 1020. Moreover, trial counsel was not ineffective for failing to raise the issue of possible burden shifting in the penalty phase jury instructions.[40] Those instructions also conformed to the approved standard jury instructions. Jones further contends that his trial counsel was ineffective for not litigating the issue of the constitutionality of the murder in the course of a *73 felony aggravator.[41] The merits of this claim have been "repeatedly denied." Mills v. State, 786 So.2d 547, 551 (Fla. 2001). Therefore, counsel was not ineffective for failing to raise the issue. Jones also avers that his trial counsel was ineffective for not litigating the issue of whether the trial court impermissibly considered a statement, from the mother of one of the victims, that appeared in the presentence investigation (PSI) report.[42] Given the thorough consideration that the trial judge gave to the aggravators and mitigators in Jones's case, there is no reasonable probability that the trial judge's sentencing decisions hinged to any degree on the referenced material in the PSI report. Our confidence in the outcome of the penalty phase is not undermined.
Finally, Jones contends that his trial counsel was ineffective for failing to prevent the prosecutor from informing the jury that it was required to recommend the death penalty.[43] Jones alludes to the closing argument made by the prosecutor in the penalty phase:
There's no doubt in this record, when Judge Perry instructed you, as a matter of law that this man had been convicted of the things for which he's being sentenced now, those convictions insofar as Brock's conviction is concerned, relates directly to the conviction establishing the aggravator on Kelli [sic] Lynn Perry.
Crimes of violence include the crimes of robbery, burglary and robbery, established as a matter of law in this case and about those things there can be no dispute. Those are established. Those are the aggravating circumstances for the two first ingredients. The cap felony was committed for pecuniary gain. I think the term is going to be defined as financial gain, when you are finally instructed on this case, ladies and gentlemen, and certainly, there's no dispute in this record and any evidence about the reason why Randy Scotty Jones executed Paul Brock and Kelly Perry the night that he did. He wanted to take the truck.
The above argument did nothing more than review the evidence as to the relevant aggravating circumstances in Jones's case. It did not, as Jones contends, contain any implication that the jury was required to recommend the death penalty. Counsel was not ineffective for failing to object to these comments or to move for a mistrial.

PETITION FOR WRIT OF HABEAS CORPUS
Jones presents three issues in his petition for writ of habeas corpus. The first is that his appellate counsel was ineffective for failing to raise the issue that Jones's trial counsel impermissibly conceded guilt to charges of premeditated murder.[44] We determined supra that Jones's trial counsel merely presented a legitimate closing argument directed to the lesser charge of second-degree murder in an attempt to spare Jones's life. Therefore, this issue is meritless. Appellate counsel cannot be ineffective for failing to raise a meritless issue. See Johnson v. *74 Singletary, 695 So.2d 263, 266-67 (Fla. 1996).
Jones's other two claims require little discussion. Jones contends that his Eighth Amendment rights have been violated because he may be incompetent at the time he is executed. Jones concedes that this claim is made simply to preserve it for review in the federal court system, and that the claim is not ripe for review because Jones has not yet been found incompetent and a death warrant has not yet been signed. No relief is warranted. See Hall v. Moore, 792 So.2d 447, 450 (Fla. 2001) (stating that it is premature for a death-sentenced individual to present a claim of incompetency or insanity, with regard to his execution, if a death warrant has not been signed).
Finally, Jones asserts that Florida's death penalty is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This Court addressed the contention that Florida's capital sentencing scheme violates the United States Constitution under Apprendi and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), cert. denied, ___ U.S. ___, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, ___ U.S. ___, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and denied relief. We find that Jones is likewise not entitled to relief on this claim. Additionally, two of the aggravating circumstances present here were that Jones had been convicted of a prior violent felony, and that the instant murder was committed while Jones was engaged in the commission of a robbery and burglary, both of which were charged by indictment and found unanimously by a jury.

CONCLUSION
After careful consideration of all of Jones's claims, we determine that he is entitled to no relief. Accordingly, we affirm the denial of Jones's motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We also deny his petition for writ of habeas corpus.
It is so ordered.
WELLS, PARIENTE, LEWIS, and QUINCE, JJ., and SHAW and HARDING, Senior Justices, concur.
ANSTEAD, C.J., specially concurs with an opinion.
ANSTEAD, C.J., specially concurring.
I concur in the majority opinion in all respects except for its discussion of the decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] Jones was also convicted of armed robbery; burglary of a conveyance while armed or with an assault or both; shooting or throwing a deadly missile into an occupied vehicle; and sexual battery.
[2] Due to the cumulative effect of errors in the penalty phase of his original trial, Jones received relief in the form of a new penalty phase. See Jones v. State, 569 So.2d 1234, 1239-40 (Fla.1990) (Jones I). Jones's direct appeal of his resentencing is presented in Jones v. State, 612 So.2d 1370 (Fla.1992) (Jones II).
[3] Jones's convictions of the noncapital felonies were affirmed, with the exception of the sexual battery conviction, which was reversed.
[4] The trial court in Jones's new penalty phase found the following aggravators for Brock's murder: previous conviction of a violent felony (Perry's murder and the other crimes committed against her); commission during an armed robbery combined with commission for pecuniary gain as a single aggravator; and commission in a cold, calculated, and premeditated (CCP) manner without any pretense of moral or legal justification. For Perry's murder the court found prior violent felony (Brock's murder and the other crimes committed against him), commission during a burglary, and commission in a cold, calculated, and premeditated manner. The court found that no statutory mitigators had been established. After conscientiously considering the nonstatutory mitigating evidence as to Jones's childhood, his suffering a disorder that impairs his coping skills, and his capability for rehabilitation, the court concluded that these factors "presented little mitigation value." Jones II, 612 So.2d at 1375.
[5] Those claims are: (I) a lack of funding prohibited Jones's capital collateral representative from preparing an adequate postconviction motion on Jones's behalf and impaired Jones's right to effective representation; (II) state agencies withheld access to files and records, thereby hampering effective presentation of Jones's postconviction motion; (III) the State violated Jones's rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (IV) ineffective assistance of counsel due to trial counsel's failure to investigate mitigating circumstances; (V) ineffective assistance of counsel due to trial counsel's laboring under a conflict of interest; (VI) ineffective assistance of counsel due to trial counsel's concession of Jones's guilt of first-degree murder; (VII) the jury was improperly instructed on the cold, calculated, and premeditated (CCP) aggravator, and trial counsel was ineffective in litigating the issue; (VIII) the jury was improperly instructed on the prior violent felony aggravator; (IX) the trial judge erred by failing to find certain mitigating circumstances; (X) the penalty phase jury instructions impermissibly diminished the jury's role; (XI) the jury was improperly instructed on the pecuniary gain and robbery aggravators, and trial counsel was ineffective in litigating the issue; (XII) the penalty phase jury instructions impermissibly shifted the burden to Jones to prove that death was not the appropriate penalty, and trial counsel was ineffective in litigating the issue; (XIII) Jones was denied his right under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), to a competent mental health exam; (XIV) cumulative errors occurred throughout Jones's trial such that the results of the proceedings are not reliable; (XV) newly discovered evidence establishes that DNA evidence used against Jones was unreliable; (XVI) the prosecutor in Jones's trial made inflammatory and overly prejudicial comments to the jury in the penalty phase; (XVII) ineffective assistance of counsel due to trial counsel's cross-examination of witnesses; (XIX) the murder in the course of a felony aggravator is unconstitutional, and trial counsel was ineffective for not litigating the issue; (XX) ineffective assistance of counsel due to trial counsel's failure to prevent improper comments by the prosecutor during voir dire; (XXI) the rule prohibiting Jones's trial counsel from interviewing jurors is unconstitutional; (XXII) jury misconduct occurred in the guilt and penalty phases of Jones's trial; (XXIII) ineffective assistance of counsel due to trial counsel's failure in litigating the violation of Jones's Miranda rights and related issues; (XXIV) Jones's right to counsel was violated due to police misconduct; (XXV) ineffective assistance of counsel due to trial counsel's failure in litigating the violation of Jones's Miranda rights and related issues; (XXVI) ineffective assistance of counsel due to trial counsel's failure to present an insanity defense; (XXVII) the trial judge improperly considered victim impact evidence, and trial counsel was ineffective in litigating the issue; (XXVIII) Jones's sentences for capital murder lack proportionality; (XXIX) the trial judge improperly delegated his sentencing authority to the State; and (XXX) Florida's death penalty statute is unconstitutional.
[6] See Huff v. State, 622 So.2d 982 (Fla. 1993).
[7] Jones appeals the denial of relief for claims III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXIII, XXIV, XXV, XXVI, XXVII, XXIX, and XXX.
[8] This issue is related to claim XXIX in Jones's amended initial 3.850 motion.
[9] These allegations in Jones's claim generally refer to sentencing proceedings undertaken upon remand to the trial court after this Court determined that Jones was entitled to a new penalty phase.
[10] Circuit Judge Robert R. Perry presided over the guilt-innocence phase of Jones's trial, as well as the initial sentencing and resentencing. Circuit Judge A.W. Nichols, III, presided over Jones's postconviction proceedings.
[11] Three witnesses testified at the evidentiary hearing. All three were presented by Jones.
[12] The trial judge and Jones's defense counsel could not testify at the evidentiary hearing because both predeceased it. We decline to consider Jones's argument that testimony given by his defense counsel in another case, to the effect that defense counsel declined to prepare or comment on a proposed sentencing order, must be considered in the instant case. Jones did not offer evidence as to this argument at the evidentiary hearing, nor did he attempt to supplement the record in the instant case with defense counsel's testimony in the other case.
[13] This was the order which Mac McLeod, the prosecutor in Jones's guilt-innocence and initial sentencing phases, testified that he wrote without substantial input from the trial judge.
[14] Jones's reliance on State v. Riechmann, 777 So.2d 342 (Fla.2000), is unavailing. In Riechmann, the prosecutor testified at the evidentiary hearing on the motion for postconviction relief that he wrote the relevant sentencing order with no substantial input from the trial judge. See id. at 352. Conversely, the prosecutor in Jones's resentencing proceeding testified unequivocally that he did not write the resentencing order.
[15] Jones addressed this issue, with varying levels of specificity, in claims IV, XXIII, XXIV, and XXV in his postconviction motion. The postconviction judge denied relief as to claim IV due to Jones's failure to establish prejudice. He found the remainder of the claims to be procedurally barred.
[16] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[17] This evidence included pay stubs from victim Kelly Lynn Perry's employer. The pay stubs bore Perry's fingerprint. See Jones I, 569 So.2d at 1236.
[18] In the direct appeal of Jones's resentencing, we noted that the trial judge had addressed certain claims of ineffectiveness that Jones had lodged against his trial counsel. However, these claims primarily concerned the effectiveness of his trial counsel in the previous sentencing phase, and whether Jones's counsel was seriously conflicted due to his previous status as an honorary deputy sheriff. See Jones II, 612 So.2d at 1372-73. Because we did not specifically address the alleged ineffectiveness of Jones's counsel in failing to consult with Dr. Krop with regard to Jones's competency to waive Miranda and other rights, we address that allegation here. The status of Jones's counsel as an honorary deputy sheriff is discussed infra.
[19] Jones does not aver that another mental health expert would have offered a different opinion with regard to his competency to waive his rights.
[20] We further note, but do not decide, that under these facts an attempt to exclude Jones's confession and other inculpatory statements solely on the basis of his purported incompetency would likely have been unavailing. In a case decided approximately two years prior to Jones's trial, the United States Supreme Court determined that with regard to a waiver of Miranda rights, a defendant's mental state is properly considered when the government (typically as represented by the police) knowingly manipulates that defendant's mental instability. See Colorado v. Connelly, 479 U.S. 157, 163-167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Jones makes no allegation that the police representatives who questioned him had reason to suspect that he might be mentally incompetent or attempted to manipulate him in any way.
[21] The same logic applies concerning the effectiveness of Jones's counsel with regard to the extradition issue. Jones's counsel secured a hearing on the validity of Jones's extradition and relied on Mississippi law for support. The main Mississippi case on which Jones relied in his postconviction proceeding states that an incarcerated person has a right to an extradition hearing, when applicable, unless he voluntarily waives that right. There is no indication that Jones did not voluntarily waive this right. The trial testimony of his confidential mental health expert indicates that he was competent at all times to do so.

Furthermore, we determine that trial counsel was not ineffective in his cross-examination of witnesses during his attempt to suppress Jones's inculpatory statements to police and relevant physical evidence. Finally, we conclude that Jones's claims with regard to the violation of his right to counsel on this issue are meritless.
[22] This issue corresponds to issue XX in Jones's amended initial 3.850 motion.
[23] Those instructions include the following language:

The sentence that you recommend to the court must be based upon the facts as you find them from the evidence and the law. You should weigh the aggravating circumstances against the mitigating circumstances, and your advisory sentence must be based on these considerations. Fla. Std. Jury Instr. (Crim.) 7.11.
[24] This assertion primarily involves claims IV and XIII in Jones's amended initial 3.850 motion.
[25] Dr. Krop administered the following tests: Minnesota Multiphasic Personality Inventory (MMPI) (administered twiceupdated version in 1991, before Jones's resentencing), Wechsler Adult Intelligence, Prescott Attitude Survey, Beck Depression Inventory, Bender Gestalt, Wechsler Memory, Tennessee Self-Concept Scale, and Malin Clinical Multi-Axial Inventory. Dr. Krop described this battery of tests as "psychological and neuropsychological." He did not engage in testing based on alcohol or drug abuse because he saw no indications of a substance abuse problem.
[26] This argument is related to claims IV and XIII in the amended initial 3.850 motion.
[27] Dr. Krop reviewed information from Jones's father and stepmother, who assumed custody of Jones when he was approximately five or six years old. He also reviewed Jones's school records (elementary through high school), his military records, and his psychiatric records (except those from Jones's service in the Army, which he could not obtain, save for the information that Jones was treated for a chemical deficiency during his service). Furthermore, Dr. Krop reviewed records pertaining to Jones's stays at two facilities which provided care for troubled adolescents and teens. He also interviewed two people at one of these facilities (Rodeheaver Boys' Ranch) who were very familiar with Jones's stay there. Finally, Dr. Krop reviewed information from state juvenile-protection authorities and information concerning Jones's behavior during incarceration. Attempts to contact Jones's relatives for interviews were generally unavailing. Jones's mother had passed away before Dr. Krop became involved in Jones's case.
[28] This behavior included Jones's problems with bowel and bladder control and his inability to display table manners or to consume or digest his food in an acceptable fashion.
[29] We also conclude that the jury's recommendation would not have changed if the issue is analyzed under the newly discovered evidence standard. Furthermore, Jones is not entitled to relief based on the asserted ineffectiveness of his counsel in failing to object to the trial judge's refusal to instruct the jury on the statutory mitigating circumstance of extreme emotional disturbance. During direct examination, Dr. Krop specifically stated that at no time did he conclude that Jones was under an extreme emotional disturbance. Trial counsel was not ineffective for failing to raise this meritless issue.

Ineffective assistance also cannot be attributed to the decision of Jones's counsel not to call Dr. Krop during the guilt-innocence phase to aid in the presentation of an insanity defense. As indicated supra, Dr. Krop analyzed Jones's mental state at the time of the murders and determined that he was not insane. Moreover, Dr. Krop's assistance with a defense of second-degree murder would have been marginal at best, because expert opinion with regard to a defendant's generally diminished lack of capacity, short of insanity, is not admissible in Florida to prove lack of premeditation. See Chestnut v. State, 538 So.2d 820, 821-24 (Fla.1989).
Finally, we reject Jones's assertion that his trial counsel was ineffective for failing to call a DNA expert during the guilt-innocence phase, and that his rights under Ake were violated. Ake pertains to rights with regard to a competent mental health examination, and does not encompass the possible prejudicial effect of opinions rendered by non-mental health experts. Moreover, DNA evidence was presented against Jones with regard to the charge of sexual battery. Jones's counsel engaged in extensive voir dire and vigorous cross-examination of the State's DNA expert, and was not deficient in his performance. Most important, Jones's conviction on sexual battery was reversed on direct appeal and the testimony of the State's DNA expert did not work further prejudice against Jones.
[30] Nor can we specifically conclude that Jones's trial counsel rendered ineffective assistance in the manner in which he investigated the existence of evidence that would mitigate against a sentence of death. The voluminous background material which Dr. Krop reviewed, and which trial counsel helped to secure, obviates such a claim. Moreover, with the exception of his allusion to the testimony that could have been provided by his sister, Trudy, Jones's assertions that there were other witnesses available who could have provided mitigating evidence are entirely conclusory and fail to establish how Jones was prejudiced. Denial of an evidentiary hearing was proper.
[31] This issue is related to claims VI and XVII in Jones's amended initial 3.850 motion.
[32] Despite Jones's contentions to the contrary, we conclude that his counsel subjected the State's case to an adversarial testing. We disagree with Jones that his trial counsel's cross-examination of witnesses was ineffectual, and conclude that trial counsel properly held the State to its burden of proof and did not abdicate his adversarial role.
[33] This issue is related to claim V in Jones's amended initial 3.850 motion.
[34] During oral argument in the instant case, Jones's postconviction counsel stated that the issue of the trial judge's possible status as an honorary deputy sheriff was not asserted at the Huff hearing. Jones made the briefest of allusions to this point in his amended initial 3.850 motion.
[35] Further, we agree with the trial court's determination that the quality of representation rendered by Jones's counsel was not affected by counsel's entirely ceremonial title of "honorary deputy sheriff." The trial court noted that counsel was a veteran public defender and that it "had never known [him] to compromise his integrity." Jones II, 612 So.2d at 1372.
[36] We also determine that the postconviction judge did not err in denying an evidentiary hearing on the claim of ineffectiveness and conflict of interest with regard to State witness Eddie Tipton. Jones cannot establish the requisite prejudice under Strickland with regard to this issue. Tipton testified only during Jones's first sentencing phase, not during the resentencing. Therefore, no further relief is warranted.
[37] This issue is related to claim III in Jones's amended initial 3.850 motion.
[38] Procedural bar was correctly determined with regard to the following claims, because they should have been or were raised on direct appeal: VII, VIII, IX, X, XI, XII, XIV, XVI, XVIII, XIX, XX, XXVII, and XXX.
[39] See claims VII and XI in Jones's amended initial 3.850 motion.
[40] See claim XII in Jones's amended initial 3.850 motion.
[41] See claim XIX in Jones's amended initial 3.850 motion.
[42] See claim XXVII in Jones's amended initial 3.850 motion.
[43] See claim XVI in Jones's amended initial 3.850 motion.
[44] Allegations of ineffectiveness with regard to appellate counsel are properly raised in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla. 2000).