[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 28, 2011
JOHN LEY
CLERK

_____

No. 08-12289

_____

D. C. Docket No. 04-00416-CV-TJC

RANDALL SCOTT JONES,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 28, 2011)

Before DUBINA, Chief Judge, EDMONDSON, and PRYOR, Circuit Judges.

PER CURIAM:

Petitioner Randall Scott Jones ("Petitioner") appeals the district court's

denial of his section 2254 habeas corpus petition challenging his death sentence.

Applying the deferential review mandated by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Florida Supreme Court's ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts; we affirm the denial of section 2254 relief.

## I. Background

In 1987, Petitioner murdered two people. After his arrest by police, Petitioner admitted that he had shot both victims.[1]

Petitioner was tried by a jury in Florida state court and was convicted of several crimes, including two counts of first-degree murder. Petitioner offered no evidence during the guilt phase. During the penalty phase, Petitioner presented evidence by an expert clinical psychologist, who discussed at length Petitioner's troubled history and mental health issues. The jury recommended (by a vote of eleven to one) to impose the death penalty; the sentencing judge imposed two death sentences for the murders.

---

[1] For additional factual background in this case, see Jones v. State, 569 So. 2d 1234, 1235-36 (Fla. 1990) ("Jones I").

On direct appeal, the Florida Supreme Court affirmed the murder convictions; but because of cumulative errors affecting the penalty phase, the Florida Supreme Court vacated the death sentences and remanded the case for another sentencing proceeding before a new jury. Jones I, 569 So. 2d at 1235.

Before the second sentencing hearing, Petitioner filed a pro se motion that sought to discharge his court-appointed lawyer and to have a different lawyer appointed. After Petitioner filed his pro se motion, Petitioner's lawyer filed a motion to withdraw from representing Petitioner. At a hearing on the motions, Petitioner's lawyer made this statement:

> [T]o say merely that I am offended or that my feelings are hurt doesn't begin to describe my reaction to [Petitioner's motion to discharge his lawyer]. It is far deeper than that. I want nothing further to do with Mr. Jones and I feel that it would be anomalous to have me further represent a man who has said of me what Mr. Jones said in his motion, and which I characterized in my motion for leave to withdraw.
>
> . . .
>
> I cannot quantify the damage that may have been done to me subconsciously or what I might fail to do for him without realizing that I was doing it, that might, in fact, hurt him during the re-trial of this case without intending to or wanting to. But, I feel that Mr. Jones and I, at this stage, very badly need a divorce.

Although the trial judge heard argument, the judge conducted no evidentiary hearing on this issue and denied both Petitioner's motion to discharge the lawyer and the lawyer's motion to withdraw. In denying the motions, the judge stated that, based on 30-plus years of experience with the lawyer, the judge "ha[d] never known [the lawyer] to compromise his advocacy." The judge also said that "a substitute counsel could never match [the] defense counsel's knowledge and familiarity with the record of this case."[2]

In the resentencing proceeding, the new jury also recommended (by a vote of ten to two) to impose the death penalty; the sentencing judge imposed two death sentences, concluding that the aggravating factors outweighed the statutory and nonstatutory mitigating factors. The Florida Supreme Court affirmed the sentences on direct appeal. Jones v. State, 612 So. 2d 1370 (Fla. 1992) ("Jones II").

Later, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The state trial court denied all of Petitioner's claims. The Florida Supreme Court affirmed the 3.850 ruling and denied

---

[2] A month later, just before the resentencing hearing, Petitioner renewed his pro se motion to dismiss his lawyer. The lawyer also renewed his motion to withdraw. The judge denied the motions.

Petitioner's application for a writ of habeas corpus. Jones v. State, 845 So. 2d 55 (Fla. 2003) ("Jones III").

Petitioner then sought habeas relief in the United States District Court for the Middle District of Florida. In a thorough, 126-page order, the district court denied Petitioner's request for habeas relief.

We granted Petitioner a certificate of appealability ("COA") on two issues:

> 1) Whether Jones was denied his Sixth, Eighth, and Fourteenth Amendment rights to effective assistance of counsel when the trial court denied his requests to remove his lawyer and his lawyer's requests to withdraw. (Ground I)
>
> 2) Whether Jones was denied his Sixth, Eighth, and Fourteenth Amendment rights to effective assistance of counsel when his lawyer failed to investigate and to present mitigating evidence at re-sentencing in addition to that which the lawyer presented at the original sentencing. (Ground II)

## II. Discussion

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Cox v. McNeil, 638 F.3d 1356, 1360 (11th Cir. 2011) (internal quotation marks and citation omitted).

But, under AEDPA, a federal court may not grant habeas relief on a claim that has been considered and rejected by a state court unless it is shown that the state court's decision was "contrary to" federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000); or that it "involved an unreasonable application" of such law, § 2254(d)(1); or that it was "based on an unreasonable determination of the facts" in the light of the record before the state court, § 2254(d)(2).

In this case, Petitioner argues that he was denied effective assistance of counsel. To establish a claim of ineffective assistance, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 104 S. Ct. 2052, 2064 (1984). Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 2068.

Within the Strickland analysis, a lawyer's decisions are shielded from later second-guessing:

[S]trategic choices [by a defendant's lawyer] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [We] apply[] a heavy measure of deference to counsel's judgments.

Id. at 2066.

In reviewing Strickland claims under AEDPA, "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This [inquiry] is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

A.

Petitioner contends that he was denied effective assistance of counsel because his lawyer labored under a conflict of interest, a conflict that the state trial judge refused to remedy: by denying Petitioner's motions to dismiss his lawyer and by denying the motions by Petitioner's lawyer to withdraw from the representation.

One part of Petitioner's argument involves alleged ineffective assistance before the lawyer's motion to withdraw representation was filed: Petitioner

contends that his lawyer had a conflict of interest because he was an honorary deputy sheriff and that, presumably as a result of the conflict, the lawyer declined to call certain character witnesses and only did enough work to maintain appearances. The second part of Petitioner's argument is that, after the trial judge denied the motion to withdraw by Petitioner's lawyer, Petitioner received ineffective assistance because his lawyer had disavowed him and that, given the lawyer's unfavorable disposition towards Petitioner, the lawyer could no longer provide Petitioner with adequate representation.

1.

In Petitioner's motion to remove his lawyer, Petitioner argued that the lawyer operated under a conflict of interest because the lawyer held the position of honorary deputy sheriff. Petitioner also argued that his lawyer had failed to call certain character witnesses at the first sentencing hearing and that his lawyer only did enough work to maintain appearances.

The Florida Supreme Court concluded that Petitioner "was not affected" by the lawyer's "entirely ceremonial title" of honorary deputy sheriff, Jones III, 845 So. 2d at 71 n.35, and that Petitioner established no prejudice under Strickland

8

because the lawyer had resigned the honorary deputy sheriff position before the pertinent resentencing, id. at 71.

The Florida Supreme Court also concluded that "counsel was not ineffective in his representation at points prior to the resentencing proceeding": a conclusion that rejected Petitioner's claims that his lawyer was ineffective for declining to call certain character witnesses and for supposedly only doing enough work to maintain appearances.[3] Jones III, 845 So. 2d at 71.

Later, the district court also concluded that Petitioner's lawyer's "honorary deputy sheriff status did not interfere with his role as Petitioner's defense counsel" and that "there was no conflict of interest." In addition, the district court rejected the claim that the lawyer's failure to call certain character witnesses showed ineffective assistance.

We accept that no ineffective assistance was shown based on these claims. The lawyer's honorary deputy sheriff status posed no conflict of interest or

---

[3] The Florida Supreme Court, in the 3.850 appeal, noted that it had once before considered and rejected Petitioner's argument that his lawyer should have been replaced. Id. at 71. In its earlier opinion on direct appeal after the resentencing, the Florida Supreme Court considered whether the lawyer's "assistance was ineffective because he 'only does just enough to maintain appearances' . . . and [because the lawyer] refused to call any of unspecified 'numerous character witnesses.'" Jones II, 612 So. 2d at 1372. The Florida Supreme Court rejected those claims on the direct appeal, explaining that the "complaints about [the lawyer's] handling of the prior sentencing proceeding do not provide a legal basis for challenging his prospective performance in the resentencing." Id. at 1373.

9

prejudice to Petitioner: Petitioner's lawyer resigned his position of honorary deputy sheriff before resentencing, and the Florida Supreme Court reasonably concluded that no actual conflict of interest existed between the lawyer's former status and his representation of criminal defendants. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1355-58 (11th Cir. 2005) (affirming in capital case the state court's rejection of same claim); Harich v. State, 573 So. 2d 303, 305-06 (Fla. 1990) (finding no actual or per se conflict of interest between lawyer and criminal defendant while lawyer was special deputy sheriff).

We also accept the Florida Supreme Court's ruling that Petitioner's lawyer had not been shown to be ineffective in declining to call certain character witnesses or in performing only enough work to keep up appearances. See Strickland, 104 S. Ct. at 2066 (deferring to a lawyer's trial-strategy judgments).

Under AEDPA, we cannot conclude that Petitioner has shown that the Florida Supreme Court's decisions about these claims were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or has shown clear and convincing evidence that they were based on an unreasonable determination of the facts.

2.

Petitioner also contends that he was denied effective assistance of counsel because the trial judge denied the motions by Petitioner's lawyer to withdraw from the representation.[4]  Because his lawyer attempted to withdraw from the representation -- and spoke particularly strong and renunciatory words in attempting to do so -- Petitioner contends that the attorney-client relationship had become "irretrievably broken" and that, thus, Petitioner received ineffective assistance from that point forward.

Applying Strickland, the Florida Supreme Court concluded that "[n]o relief is warranted on" the issue "that [Petitioner's] counsel was ineffective because . . . counsel's motion to withdraw from representation affected the quality of representation."  Jones III, 845 So. 2d at 71; see also Jones II, 612 So. 2d at 1373 ("We find that the refusal to dismiss [Petitioner's lawyer] was within the court's discretion and that no error occurred.").[5]

_____

[4] The judge also denied Petitioner's pro se motions to dismiss his lawyer.

[5] We reject Petitioner's contention that no court ever addressed the fact that the judge denied motions by Petitioner's lawyer to withdraw from the representation.  See Jones III, 845 So. 2d at 71 ("Specifically, Jones contends that . . . counsel's motion to withdraw from representation affected the quality of representation that he received to the point that it became substandard."); Jones II, 612 So. 2d at 1372 ("After Jones filed this motion, [Petitioner's lawyer] moved for permission to withdraw, claiming that Jones' motion and allegations had created an

11

Later, the district court concluded that the Florida Supreme Court committed no error in its review of this claim. The district court saw no conflict of interest and no error in the state trial court's handling of the motions aimed at changing Petitioner's lawyer.

We agree that Petitioner has made no showing that the denial of his lawyer's motions to withdraw as Petitioner's lawyer rendered ineffective the legal counsel Petitioner received from that point on. For a seasoned defense lawyer -- likely accustomed to dealing with all manner of difficult and colorful clients -- to state in open court that "I want nothing further to do with [my client]" is worthy of note. But then the lawyer was required by the court to carry on with his difficult duty. We do not -- and the law does not -- assume that lawyers will fail to do their duty, even when the duty is painful and difficult. We expect that many lawyers in many circumstances would like to be at liberty to relinquish their representation in a particular case. But lawyers are not at liberty to stop when it might suit them, and they know it. In cases like this one, ineffectiveness must be shown.

irreconcilable conflict that destroyed the attorney/client relationship."). We see no indication from the Florida Supreme Court's opinions that it overlooked the motions to withdraw by Petitioner's lawyer when it rejected Petitioner's ineffective assistance claims. A state court need not spell out each of its reasons for us to accept the state court's ruling on AEDPA review. See Harrington, 131 S. Ct. at 784 (requiring no explanation of a state court's reasoning for a reviewing court to determine whether the state court's decision was unreasonable under section 2254(d)).

Petitioner points to no United States Supreme Court holding indicating that the Florida Supreme Court was unreasonable in concluding that the denial of the motions to change Petitioner's lawyer did not establish ineffective assistance going forward (based on denial of either the motions by Petitioner or the motions by Petitioner's lawyer).

Given the Florida Supreme Court's reasonable conclusion that no actual conflict of interest existed -- on any basis -- in this case, Petitioner's reliance on Cuyler v. Sullivan is unhelpful. See 100 S. Ct. 1708, 1718 (1980) (concluding that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance"). And Petitioner has failed to show that the Florida Supreme Court's decision was unreasonable in the light of Wood v. Georgia. See 101 S. Ct. 1097, 1103-04 (1981) (directing court to hold hearing about possible conflict of interest where defendant's lawyer had a third-party fee arrangement).

B.

Petitioner also makes a specific claim about the lawyer's performance at the resentencing. Petitioner argues that he was denied effective assistance when his lawyer failed to investigate or to present mitigating evidence from other witnesses -- including from Petitioner's sister, Trudy -- about Petitioner's troubled background before the age of five.

On this claim, the Florida Supreme Court concluded that Petitioner's argument was "entirely conclusory" and that Petitioner had made an insufficient showing of prejudice under Strickland. See Jones III, 845 So. 2d at 70 n.30. The Florida Supreme Court determined that the jury was informed enough about Petitioner's early life through the expert psychologist's testimony and that additional testimony would not have changed the jury's recommendation for the death penalty. See id. at 69-70.

For similar reasons, the district court likewise concluded, under Strickland, that Petitioner's lawyer provided effective assistance, that Petitioner made no showing of prejudice on this claim, and that no basis existed under AEDPA to overturn the Florida Supreme Court's ruling.

14

In the light of AEDPA, we accept that Petitioner's lawyer provided effective assistance and did not fail to investigate or to present sufficient mitigating evidence at resentencing. Petitioner's lawyer called an experienced clinical psychologist at the resentencing and ensured that the psychologist was sufficiently prepared to present a complete case for mitigation: the expert met with Petitioner four times, the expert conducted extensive testing on Petitioner, and the expert reviewed voluminous documentary evidence about Petitioner's past. At the resentencing, the expert offered wide-ranging details about Petitioner's childhood, upbringing, and background, including some commentary about Petitioner's background before age five. We agree that additional testimony from Petitioner's sister, or from other witnesses, would likely have been cumulative; and we conclude that Petitioner has made no sufficient showing of prejudice under Strickland. In addition, under these facts, we do not second-guess a lawyer's decisions about which witnesses to call and how to present mitigating evidence. See Robinson v. Moore, 300 F.3d 1320, 1335-36, 1348-49 (11th Cir. 2002).

Most important, Petitioner has shown neither that the Florida Supreme Court's ruling on this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court nor shown clear and convincing evidence that the decision was

15

based upon an unreasonable determination of the facts. The cases on which Petitioner relies are too different from this case for us to conclude, under AEDPA, that the Florida Supreme Court made an unreasonable ruling. See Wiggins v. Smith, 123 S. Ct. 2527, 2537-39 (2003) (concluding that defense lawyer unreasonably limited his mitigating-evidence investigation to the presentence investigation report and department of social services records and that the "failure to investigate thoroughly resulted from inattention"); Williams v. Taylor, 120 S. Ct. 1495, 1514-15 (2000) (concluding that defendant's lawyer failed to conduct "a thorough investigation of the defendant's background" where the lawyer failed to prepare until a week before and failed to conduct an investigation that would have uncovered graphic descriptions of defendant's "nightmarish childhood").

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief for Petitioner.

AFFIRMED.